**Dewayne FRY et al., Plaintiffs,**

v.

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 2–1301.**

United States District Court,
N. D. Texas,
Amarillo Division.

March 21, 1973.

Broadus A. Spivey, Gibbins & Spivey, Austin, Tex., for plaintiffs.

Stanley E. Neely, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., for defendant.

## ORDER

WOODWARD, District Judge.

Plaintiffs bring the present action on behalf of themselves and as representing a class. Jurisdiction is based upon portions of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2, 4, and 7, as well as 15 U. S.C. §§ 9, 10, 13, 13a, 14, and 15. Plaintiffs allege that defendant engaged in an unlawful conspiracy in unreasonable restraint of interstate farm loans, specifically by employing tie-in arrangements requiring members of the class to purchase irrigation systems and/or life insurance policies from defendant as a

condition of obtaining farm loans from defendant. Further, it is charged that defendant used excessive loan valuations on the property in question, plus high interest rates, both in combination with the tie-in agreements, for the conspiratorial purpose of later foreclosing on said property and obtaining title thereto.

Defendant moves to dismiss the complaint for lack of jurisdiction, claiming that the McCarran-Ferguson Insurance Regulation Act (the Act), 15 U.S.C. § 1011 et seq., exempts the complained-of activities from the federal antitrust laws. Defendant correctly contends that the Act was designed to provide state, rather than federal, regulation of the "business of insurance" and that the State of Texas has enacted statutes for the purpose of so regulating the "business of insurance." Tex.Ins.Code Ann. art. 1.01 et seq.

■ The question for this Court on the motion to dismiss is whether the activities complained of, even though they may be actions taken by an insurance company, are part of the "business of insurance" which Congress sought to remove from federal regulation. This Court holds that they are not and that defendant's motion to dismiss must accordingly be denied.

The controlling law on the question now before the Court is that expressed by the United States Supreme Court in SEC v. National Securities, Inc., 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). *National Securities* was an action brought under section 21(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(e), alleging violations of § 10(b) of that act, 15 U.S.C. § 78j(b), and of Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder. The alleged violations consisted of misrepresentations of material facts as part of a communication to the stockholders of one of the insurance companies, which communication sought to obtain shareholder approval of a merger with another insurance company.

The Court held that ". . . we do not believe that a state statute aimed at protecting the interests of those who own stock in insurance companies comes within the sweep of the [Act]. Such a statute is not a state attempt to regulate 'the business of insurance,' as that phrase was used in the Act." 393 U.S. at 457, 89 S.Ct. at 567. This Court is able to perceive no reason why a state statute seeking to regulate the antitrust aspects of insurance company lending is any more closely related to the "business of insurance" than a statute regulating disclosures pursuant to attempted insurance company mergers.

Neither type of statute attempts to regulate activities which center upon the relationship between the insurance company and the policyholder, the very relationship which the Supreme Court has held to be the relationship with which Congress, in passing the Act, was concerned:

> The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement—these were the core of the 'business of insurance . . . .' [T]he focus . . . was on the relationship between the insurance company and the policyholder.

*Id.* at 460, 89 S.Ct. at 568. Thus the Court held that although the Arizona statute in question applied only to insurance companies, it was an attempt at securities regulation rather than insurance regulation. Accordingly, this Court finds it unnecessary to consider the provisions of the statutes of Texas or of the other states involved in the present suit since it is clear that any state statutes purporting to regulate the antitrust aspects of insurance company lending (aside possibly from loans to policyholders to finance premiums) would be antitrust regulation rather than insurance regulation. As the Supreme Court explained in *National Securities*,

> The crucial point is that here the State has focused its attention on

stockholder protection; it is not attempting to secure the interests of those purchasing insurance policies. Such regulation is not within the scope of the McCarran-Ferguson Act. 393 U.S. at 460, 89 S.Ct. at 569.

It appears that here, as in *National Securities,* state regulation of the "business of insurance" is not in conflict with Congressional regulation of (in the present case) the federal antitrust laws or of (in *National Securities*) the federal securities laws. "The paramount federal interest in protecting shareholders is in this situation perfectly compatible with the paramount state interest in protecting policyholders. And the remedy the [SEC] seeks does not affect a matter predominantly of concern to policyholders alone; the merger is at least as important to those owning the companies' stock as it is to those holding their policies. In these circumstances, we simply cannot see the conflict." 393 U.S. at 463, 89 S.Ct. at 570.

Defendant cites 15 U.S.C. § 1012(b) in support of its contention that even though Congress may not have intended to allow state supremacy in the field of securities regulation (as in *National Securities*), Congress specifically provided that state statutes regulating the antitrust activities of insurance companies shall supersede the Sherman and Clayton Acts. Section 1012(b) reads as follows:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided,* That . . . the Sherman Act, and . . . the Clayton Act . . . shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

This Court's determination that the activities here complained of are not a part of the "business of insurance," as intended by the Act, is sufficient to decide the present motion with respect to 15 U.S.C. § 1012(b).

The fact that insurance policies are involved in the alleged tie-in arrangements does not require a holding in favor of defendant. These policies are only incidental to the loan agreements, and the abuses here complained of regarding those policies are not the abuses which Congress intended to allow the states to regulate. "Congress was mainly concerned with the relationship between insurance ratemaking and the antitrust laws, and with the power of the States to tax insurance companies." SEC v. National Securities, Inc., 393 U. S. 453, 458–459, 89 S.Ct. 564, 568, 21 L. Ed.2d 668 (1969). Thus state law might very well govern a case of alleged rate-fixing or illegal rebate activities in the sale of insurance policies but would not supersede the federal statutes in a case of rate-fixing in the lending activities of insurance companies.

■ Defendant cites several cases supporting the proposition that lending by insurance companies is part of the "business of insurance." However, it is clear first of all that the interpretation of what constitutes the "business of insurance" as that term is used in the Act is a federal question and that federal interpretations· supersede those of state courts. SEC v. Variable Annuity Co., 359 U.S. 65, 69, 79 S.Ct. 618, 3 L.Ed.2d 640 (1959). Second, none of the cases cited by defendant interpret the phrase "business of insurance" within the meaning of the Act. Rather, these cases deal primarily with the ability of insurance companies to conduct various business activities as part of the "business of insurance."

■ Plaintiffs' complaint alleges violations of both the Sherman Act and the Clayton Act. It appears however that plaintiffs at oral argument have foregone their Clayton Act claim. Clearly plaintiffs' claim states a cause of action under the Sherman Act where credit is one of the items used in an alleged tying arrangement. Fortner Enterprises, Inc.

v. United States Steel Corp., 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969).

Since plaintiffs' complaint states a cause of action under the laws of the United States, therefore, defendant's motion to dismiss is hereby denied.

The Court is of the opinion that the above order is not appealable under 28 U.S.C. § 1291 but that said order involves a controlling question of law as to which there is substantial ground for difference of opinion. The Court has been advised by all parties that the instant case will involve discovery procedures extraordinary in extent and in expense, and the Court is accordingly of the opinion that an immediate appeal from the present order under 28 U.S.C. § 1292(b) may materially advance the ultimate termination of the instant litigation.