AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS

v.

PLANNED MARKETING ASSOCIATES, INC., et al.

Civ. A. No. 74-0412-R.

United States District Court,
E. D. Virginia,
Richmond Division.

Dec. 5, 1974.

Alexander H. Slaughter, Richmond, Va., Peter G. Williams, Columbus, Ga., for plaintiff.

Joseph M. Spivey, III, John H. Shenefield, Richmond, Va., for defendants.

## MEMORANDUM

WARRINER, District Judge.

Plaintiff filed its complaint herein on 20 September 1974 stating a cause of action under § 1 of the Sherman Act, 15 U.S.C. § 1, and §§ 4 and 16 of the Clayton Act, 14 U.S.C. §§ 15, 26. Plaintiff also alleged diversity jurisdiction with respect to certain common law counts which were set forth in the complaint. Plaintiff sought a temporary restraining order, a preliminary injunction, and a permanent injunction.

Both plaintiff and defendants are engaged in the business of writing cancer insurance. Such insurance is usually sold by means of group policies. Plaintiff has been in the business for a good number of years and has an extensive agency organization. Defendants are relative newcomers to the field.

The factual basis upon which all of plaintiff's counts are derived centers around activities on the part of defend-

ants directed toward inducing large numbers of plaintiff's agents to cease selling plaintiff's insurance and, instead, to sell defendants' policies; to utilize plaintiff's trade secrets in furtherance of defendants' business; to utilize plaintiff's customer lists in furtherance of defendants' business; to "switch" or "twist" plaintiff's policyholders to defendants' policies, and, in effect, to usurp plaintiff's agency organization to the detriment of plaintiff and for the benefit of defendants.

Plaintiff waived its motion for a temporary restraining order and the matter was set down for a hearing on its motion for a preliminary injunction on 30 September 1974. On 27 September plaintiff filed an extensive brief in support of its motion for a preliminary injunction. When the matter was called for hearing on 30 September, defendants filed an equally extensive brief in opposition to plaintiff's motion for a preliminary injunction, but this brief dealt primarily with the question of jurisdiction —a subject plaintiff had not considered in its brief.

Defendants having raised the question of jurisdiction, the Court heard counsel orally before receiving any evidence. The thrust of defendants' argument on jurisdiction was that the McCarran-Ferguson Act, 15 U.S.C. § 1012(b) excludes from federal jurisdiction the "business of insurance" to the extent that such business is regulated by State law. The Act reads in pertinent part as follows:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: Provided, That . . . the Sherman Act, and . . . the Clayton Act . . . shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

Defendants cited the Virginia Insurance Unfair Trade Practices Act, Va. Code Ann. § 38.1–49 et seq., and the Virginia Antitrust Act, Title 59.1 of the Code of Virginia as showing that Virginia had, indeed, enacted legislation regulating the business of insurance so broadly that all the counts set forth in plaintiff's complaint were encompassed within the regulatory enactments of the Commonwealth.

With respect to the diversity jurisdiction alleged under counts sounding in common law, defendants showed that legislation enacted by the Commonwealth entrusted to the Bureau of Insurance of the State Corporation Commission administrative review and authority to issue cease and desist orders whenever it deemed a factual basis to exist and the public interest to require a remedy.

Defendants cited numerous cases in brief and at oral argument. Plaintiff, not having received a copy of defendants' brief until the commencement of the hearing, was not in a position to distinguish or discuss the cases cited. In responding to defendants' argument counsel for plaintiff observed that it was his recollection of the legislative history of the McCarran-Ferguson Act that it was intended to reserve to the States merely that aspect of the business of insurance having to do with the relationship between the insurance company and its policy holders.

The cases cited by defendants made such a legislative history highly unlikely since the cited cases construed "the business of insurance" to mean "business in which insurance companies are involved." See *e. g.* FTC v. National Casualty Company, 357 U.S. 560, 78 S.Ct. 1260, 2 L.Ed.2d 1540 (1958); Holly Springs Funeral Home, Inc. v. United Funeral Services Inc., 303 F.Supp. 128 (N.D.Miss.1969); Miley v. John Hancock Mutual Life Insurance Company, 148 F.Supp. 299 (D.Mass.1957), aff'd 242 F.2d 758 (1st Cir. 1957), cert. denied, 355 U.S. 828, 78 S.Ct. 38, 2 L.Ed.2d 41 (1957); Transnational Insurance Company v. Rosenlund, 261 F.Supp. 12 (D.Ore.1966); Ohio AFL–CIO v. In-

surance Rating Board, 451 F.2d 1178 (6th Cir. 1971), cert. denied, 409 U.S. 917, 93 S.Ct. 215, 34 L.Ed.2d 180 (1972); Commander Leasing Company v. Trans-America Title Insurance Company, 477 F.2d 77 (10th Cir. 1973); California League of Independent Insurance Producers v. Aetna Casualty and Surety Company, 175 F.Supp. 857 (N. D.Cal.1958); Professional and Businessmen's Life Insurance Company v. Bankers Life Company, 163 F.Supp. 274 (D. Mont.1958).

The Court was persuaded upon oral argument that it did not have jurisdiction because of the exclusive language of the McCarran-Ferguson Act. Without doubt, the acts complained of came within the purview of the regulatory scheme set forth in the Virginia Unfair Trade Practices Act, *supra*, and the Virginia Antitrust Act, *supra*. With respect to the ancillary common law claims set forth by plaintiff, the Court declined to exercise jurisdiction because a more expert, effective and speedy remedy, so the Court observed, could be obtained from the Commonwealth under the provisions of the State regulatory acts above cited.

In accordance with the Court's opinion, an order was entered on 1 October 1974 dismissing the cause of action unless plaintiff filed an amended complaint in ten days bringing its action within the 15 U.S.C. § 1013(b) exception to the McCarran-Ferguson exclusion.

Within ten days plaintiff filed a motion under Fed.R.Civ.Proc. 59(e) and 60(b) requesting the Court to "vacate and set aside its order of 1 October 1974," on the ground that the Court's dismissal of plaintiff's complaint for lack of jurisdiction "was contrary to law." Plaintiff further requested the Court to stay its order of 1 October 1974 pending disposition of its motion to vacate and set aside said order. At the same time, plaintiff tendered an amended complaint setting forth all the matters contained in the original complaint and adding two additional counts based upon the substantive portions of the reg-ulatory acts of the Commonwealth above mentioned.

An order was entered on 10 October 1974 staying the force and effect of the order of 1 October 1974 and the filing of briefs was accelerated. Within due time defendants filed their brief in opposition to plaintiff's motion to vacate and set aside the previous order of the Court, opposing plaintiff's right to file such a motion, and opposing plaintiff's right to file its amended complaint either without leave of Court or with leave of Court. Thus, before determining whether or not the Court should vacate and set aside its order of 1 October 1974 the Court must first determine whether it is empowered to consider plaintiff's motion so to do.

■ Defendants point out that plaintiff's motion to vacate and set aside the Court's previous order is, in reality, merely an appeal from that order. Defendants concede, however, that Rule 59(e) is available to a movant who seeks to have an order vacated. 11 Wright & Miller Fed. Practice & Procedure, § 2804 (1973); 6A Moore, Fed. Practice, para. 59.12[1] (1974).

■ Since Rule 59(e) admittedly is authority for a motion to vacate an order, the Court will docket and consider the motion under authority of Rule 59(e).

This, then brings us to the merits of the motion to vacate and set aside the previous order on the basis that the Court, through inadvertence or mistake, misapplied and misunderstood the exclusionary thrust of the McCarran-Ferguson Act. For the reasons hereinafter set forth, it is clear that the Court did, indeed, misunderstand and misapply the McCarran-Ferguson Act exclusion.

Defendants' argument that the words, "the business of insurance" as used in the McCarran Act have been construed by the courts to encompass virtually all activities engaged in by insurance companies is correct for decisions rendered prior to 1969. Thus, in ante-1969 cases, where a plaintiff brought an action

against an insurance company based upon the Sherman Act, the Court properly inquired as to whether the State had entered the field (it invariably had), and whether the plaintiff had successfully pleaded himself into the "intimidation, coercion or boycott" exemption to the McCarran-Ferguson Act. The great bulk of the cases cited by defendants, *supra,* were decided during this period.

■■ In 1969 the Supreme Court decided SEC v. National Securities, Inc., 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). In *National Securities* the court held that "the business of insurance" pertained to those activities *peculiar* to the insurance industry. Business activities of insurance companies not peculiar to the insurance industry were found to be subject to federal regulatory laws. The fact that a State has enacted legislation regulating the insurance industry is not material under the *National Securities* holding. State legislation proscribing the very acts complained of will not oust federal jurisdiction unless such acts are peculiar to the insurance industry. Acts peculiar to the insurance industry would include such things as the relationship between the insurer and the insured, the language and content of an insurance policy, the financial reliability of an insurance company and other similar matters involved in the insurance industry.

It is true that some lower courts decided cases after the *National Securities* decision without recognizing the fundamental change in approach called for by the Supreme Court. See *e. g.* Gerecht v. American Insurance Company, 344 F. Supp. 1056 (W.D.Mo.1971); Sanborn v. Palm, 336 F.Supp. 222 (S.D.Tex.1971); Holly Springs Funeral Home, Inc. v. United Funeral Services, Inc., 303 F. Supp. 128 (N.D.Miss.1969). None of these cases cited *National Securities*, consequently, they are of little value in interpreting its meaning.

*National Securities* involved a complaint filed by the Securities and Exchange Commission in the U. S. District Court for the District of Arizona alleging violations of the Securities Exchange Act. The alleged violation involved an insurance company's business dealings with its stockholders. Since the State of Arizona had enacted legislation regulating the insurance industry, both the District Court (252 F.Supp. 623 (1966) ) and the Court of Appeals (387 F.2d 25 (9th Cir. 1967) ) held that the federal courts were without jurisdiction in light of the exclusionary provisions of the McCarran-Ferguson Act.

On appeal, the Supreme Court reviewed the history of federal regulation of the insurance industry. Paul v. Virginia, 75 U.S. (8 Wall.) 168, 183, 19 L. Ed. 357 (1869) had held that "[i]ssuing a policy of insurance is not a transaction of commerce." In United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944), the Court reversed Paul v. Virginia, *supra,* and held that insurance transactions were subject to federal regulation under the Commerce Clause and that the anti-trust laws, in particular, were applicable to them. Congress was opposed to this decision and enacted the McCarran-Ferguson Act in direct response thereto. Prudential Insurance Company v. Benjamin, 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946). After considering further the history of the act the Court in *National Securities* concluded 393 U.S. at pp. 459–460, 89 S.Ct. at p. 568:

> Given this history, the language of the statute takes on a different coloration. The statute did not purport to make the States supreme in regulating all the activities of insurance *companies*; its language refers not to the persons or companies who are subject to state regulation, but to laws "regulating the *business* of insurance." Insurance companies may do many things which are subject to paramount federal regulation; only when they are engaged in the "business of insurance" does the statute apply. Certainly the fixing of rates is part of this business . . .. [t]he selling and

advertising of policies . . . and the licensing of companies and their agents . . . are also within the scope of the statute. Congress was concerned with the type of state regulation that centers around the contract of insurance, the transaction which Paul v. Virginia held was not "commerce." The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement— these were the core of the "business of insurance." Undoubtedly, other activities of insurance companies relate so closely to their status as reliable insurers that they too must be placed in the same class. But whatever the exact scope of the statutory term, it is clear where the focus was—it was on the relationship between the insurance company and the policy holder. Statutes aimed at protecting or regulating this relationship, directly or indirectly are laws regulating the "business of insurance." [Emphasis in the original. Citations omitted.]

■■ It is true that the Court in *National Securities* noted that Congress had in mind anti-trust laws at the time it enacted the McCarran-Ferguson Act. But the Court did not conclude that Congress was concerned with the anti-trust laws per se, but instead the Court observed that "Congress was mainly concerned with the relationship between insurance ratemaking and the antitrust laws . . .." This observation by the Court coupled with its clear holding that the focus of the term "business of insurance" as used in the McCarran-Ferguson Act "was on the relationship between the insurance company and the policy holder," compels this Court to conclude that a complaint based upon the Sherman Act and the Clayton Act involving interactions between two insurance companies, as distinguished from transactions between an insurance company and its policy holders, is not barred from federal jurisdiction by the McCarran-Ferguson Act.

The complaint clearly alleges activities on the part of an insurance company, its officers and agents which are proscribed by the Sherman Act and the Clayton Act. Even though the Commonwealth may have legislation similar to the Sherman Act and the Clayton Act, the McCarran-Ferguson Act does not oust this Court of jurisdiction unless the activities complained of, though prohibited by State legislation, are not a part of the "business of insurance" as defined in *National Securities*.

■ It is true that *National Securities* defined "business of insurance" as that term was used in the first portion of the McCarran-Ferguson Act. Nevertheless, the second portion of the McCarran-Ferguson Act, with which we are concerned, contains the same phrase —"business of insurance" as is contained in the first portion of the act. The act is all contained in one sentence, though having two parts, and it must be presumed that the meaning of the phrase in the first part of the sentence is identical with the meaning of the phrase in the second part of the sentence.

■ Thus, the State anti-trust and restraint of trade regulation which would oust federal anti-trust and restraint of trade legislation must be State regulation of anti-trust and restraint of trade activities which directly or indirectly affect the relationship between the insurer and its insured. See Fry v. John Hancock Mutual Life Insurance Company, 355 F.Supp. 1151 (ND/Tex. 1973).

The activities by defendants of which plaintiff complains are centered on competition between two insurance companies for business. The Supreme Court in *National Securities* suggested a number of activities in which State regulation would be paramount. These include the fixing of rates, the selling and advertising of policies, the licensing of companies and their agents, the contract of insurance, itself, the type of policy which could be issued, the policy's relia-

bility, interpretation and enforcement, and "other activities of insurance companies relate[d] so closely to their status as reliable insurers." The activities complained of by plaintiff pertain to none of these categories nor to any other category of activity that bears on the relationship between the insurance company and the policy holder. To the contrary, the activities complained of could easily be employed by one stock brokerage firm against another as by one insurance company against another.

Having determined that the McCarran-Ferguson Act does not exclude this Court from jurisdiction under the particular facts alleged in the complaint, the Court need consider only briefly the remaining grounds upon which defendants object to jurisdiction.

■ Plaintiff's administrative remedy through the Bureau of Insurance of the State Corporation Commission of the Commonwealth is inadequate. Virginia Code Ann. § 38.1-54 (1970) provides as follows:

> Whenever the Commission shall have reason to believe that any such person has been engaged or is engaging in this State in any unfair method of competition or any unfair or deceptive act or practice defined in § 38.1-52, and that a proceeding by it in respect thereto would be to the interest of the public, it shall issue and serve upon such person a statement of the charges in that respect and a notice of a hearing thereon to be held at a time and place fixed in the notice . . ..

It is apparent that the administrative remedy provided is not an adversary one wherein plaintiff may appear as of right. No hearing is provided plaintiff. The hearing is provided to one who is allegedly engaging in proscribed activity. Such a hearing is not held as plaintiff's right, but only when the public interest would be served. The remedy provided affords plaintiff no recompense for damages suffered as a result of defendants' illegal activities. The only remedy provided under the State statute is a cease and desist order. Virginia

Code Ann. § 38.1-55 (1970). Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Atlantic & Pacific Insurance Company v. Combined Insurance Company, 312 F.2d 513 (10th Cir. 1962).

■ The Court declines to apply the doctrine of primary jurisdiction since under the *National Securities* definition of the "business of insurance," the activities complained of are not a part of the business of insurance. They are merely a part of business. Hence, theoretically, at least, the State Bureau of Insurance is not required to be an expert with respect to the complained of activities and no uniformity of application is needed. Meatcutters Union v. Jewel Tea Company, 381 U.S. 676, 686, 85 S.Ct. 1596, 1607, 14 L.Ed.2d 640 (1965); Locust Cartage Company v. TransAmerican Freight Lines, Inc., 430 F.2d 334, 340 n. 5 (1st Cir. 1970) cert. denied 400 U.S. 964, 91 S.Ct. 365, 27 L. Ed.2d 383 (1970).

This Court realizes that when it applies the *National Securities* definition of the "business of insurance" to delimit the exclusive applicability of State anti-trust and unfair competition acts, it largely emasculates any substantial efficacy in those acts to preclude federal jurisdiction in the anti-trust and unfair competition fields. While the decision in this case is based on somewhat different reasoning, it is in accord with the decision in Fry v. John Hancock Mutual Insurance Company, 355 F.Supp. 1151 (N.D.Tex.1973). The *Fry* decision has been criticized in an able student note in 1973 Duke L.Jur. 1340, 1352–1354. The Court is also mindful that, having accepted jurisdiction, substantial outlay in time, effort and money will be expended in the District Court before a right to appeal will, under ordinary circumstances, accrue. Accordingly, since this decision may be unwarranted extension of the *National Securities* holding, the Court will grant the parties the right to seek an immediate appeal under the provisions of 28 U.S.C. § 1292(b).

An appropriate order shall issue.