**ALLIED FINANCIAL SERVICES, INC.,
a Nebraska Corporation, Plaintiff,**

v.

**FOREMOST INSURANCE COMPANY, a
Michigan Corporation, Defendant.**

**Civ. No. 76–0–69.**

United States District Court,
D. Nebraska.

Aug. 4, 1976.

Jeffrey A. Silver, Omaha, Neb., for plaintiff.

Robert D. Mullin, Jr., Omaha, Neb., for defendant.

## MEMORANDUM AND ORDER

DENNEY, District Judge.

This matter comes before the Court on defendant's motion to dismiss Counts I and III of the complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), and Counts V and VI for lack of jurisdiction of the subject matter, Fed.R.Civ.P. 12(b)(1).

Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332(a) and the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2; 28 U.S.C. § 1337.

Plaintiff, Allied Financial Services (Allied), and defendant, Foremost Insurance Company (Foremost), executed an agreement designating Allied as Foremost's general agent for the sale of mobile home physical damage insurance. Allied employed sub-agents for this purpose.

Allied alleged seven counts charging Foremost with:

I. Breach of contract by "pirating" Allied's sub-agents and circumventing Allied's general agency;

II. Tortious interference with contract by inducing sub-agents to breach agreements with Allied;

III. Breach of contract by competing directly with Allied and employing other agents to do so;

IV. Causing Allied to lose commissions;

V. Monopolization, attempt and conspiracy to monopolize trade and commerce in violation of the Sherman Act, 15 U.S.C. § 2;

VI. Combination and conspiracy to restrain trade and commerce in violation of the Sherman Act, 15 U.S.C. § 1, by the above acts and by imposing restrictive terms on Allied's sale of insurance;

VII. Violation of Neb.Rev.Stat. § 44-1525(4) (Reissue 1974) and Neb.Rev.Stat. § 59-801 *et seq.* (Reissue 1974) by the above acts and by precluding Allied from selling insurance except on unfavorable terms.

## FAILURE TO STATE A CLAIM FOR RELIEF

In Count I, plaintiff claims the "pirating" of its sub-agents by defendant with malice, bad faith, and knowledge that as a consequence plaintiff would be unable to perform its agreement with defendant. The Court liberally construes these allegations [1] as a claim for breach of contract by prevention of performance.

■ "[A]n implied provision of every contract is that neither party to the contract will do anything to prevent performance thereof by the other party or commit any act that will hinder or delay performance." *Peter Kiewit Sons' Co. v. Summit Constr. Co.*, 422 F.2d 242, 257 (8th Cir. 1969) *cited in Investors Thrift Corp. v. Hunt*, 387 F.Supp. 517, 524 (W.D.Ark.1974), *aff'd*, 511 F.2d 1161 (8th Cir. 1975). "A principal who has contracted to afford an agent an opportunity to work has a duty to refrain from

unreasonably interfering with his work." *Restatement (Second) of Agency* § 434 (1958). The motion to dismiss should be denied as to Count I.

■ Count III essentially charges that defendant distributed insurance through other agents and competed directly with plaintiff, thereby causing plaintiff to lose commissions. These allegations fail to state a claim for relief in contract, agency or tort law.

■ Unless restrained by contract terms which, for example, create an exclusive agency or a duty by defendant not to compete, defendant is privileged to employ other agents for the sale of its product and to compete directly with plaintiff. "The principal does not, by contracting to pay compensation contingent upon the agent's success in accomplishing a definite result, thereby promise that he will not compete either personally or through another agent." *Restatement (Second) of Agency* § 449 (1958).

■ Plaintiff's general allegation that, by competing with plaintiff and employing others to do so, defendant "has unreasonably interfered with and continues to interfere with the work of the plaintiff" fails to state a claim within the principles embodied in the *Restatement of Torts* § 709 (1938).[2]

## JURISDICTION OF THE SUBJECT MATTER

### McCarran-Ferguson Act

Defendant bases its motion to dismiss Counts V and VI upon Section 1012(b)[3] of

---

1. "A complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Morton Bldgs. of Neb., Inc. v. Morton Bldgs., Inc.*, 333 F.Supp. 187, 191 (D.Neb.1971), *citing* 2A J. Moore, *Federal Practice* ¶ 12.08.

2. "One who engages in a business primarily for the purpose of causing loss of business to another and with the intention of terminating the business when that purpose is accomplished is liable to the other for the loss so caused." *Restatement of Torts* § 709 (1938). Otherwise,

"[o]ne who causes loss of business or occupation to another merely by engaging in a business or occupation in good faith is not liable to the other for the loss so caused, though he knows that the loss will result." *Id.* § 708.

3. Section 1012(b) provides: (b) No Act of Congress shall be construed to invalidate, impair, or supercede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided*, That . . . the Sherman Act, . . . the Clayton Act, and . . . the Federal Trade Com-

the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–1015 (McCarran Act). Section 1012(b) exempts "the business of insurance" from federal regulatory laws including the Sherman Act to the extent such business is regulated by state law.[4]

As plaintiff indicates in opposing the motion to dismiss, "[t]he question which must be resolved is whether the actions forming the basis of Plaintiff's Fifth and Sixth Causes of Action involve the 'business of insurance' as that term is used in the McCarran-Ferguson Act, merely because an insurance company and one of its agents is involved." Plaintiff denies that the acts complained of are peculiar to the insurance industry or form part of "the business of insurance" and contends that it is only incidental to this case that one party is an insurance company. The Court finds that the alleged interference with contract relations and other anticompetitive behavior alleged in the complaint only peripherally involve insurance and thus are not removed from this Court's jurisdiction by Section 1012(b) of the McCarran Act.

*The Business of Insurance*

In 1969, the Supreme Court limited the scope of Section 1012(b) by narrowing the meaning of "the business of insurance." In *SEC v. National Securities, Inc.,* 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969) (*National Securities*), a suit contesting the merger of two insurance companies, the Court denied the exemption because the challenged acts (misleading proxy solicitations) were in essence a matter of securities regulation, not insurance regulation. The Court defined the "core" of "the business of insurance" as "the relationship between insurer and insured" and "the contract of insurance," as opposed to conduct which only incidentally involves insurance companies or only peripherally concerns insurance.

> Congress was concerned with the type of state regulation that centers around the contract of insurance . . . . The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement—these were the core of the "business of insurance." Undoubtedly, other activities of insurance companies relate so closely to their status as reliable insurers that they too must be placed in the same class. But whatever the exact scope of the statutory term, it is clear where the focus was—it was on the relationship between the insurance company and the policyholder. Statutes aimed at protecting or regulating this relationship, directly or indirectly are laws regulating the "business of insurance." *Id.* at 460, 89 S.Ct. at 568.

In light of its history,[5] the court explained the purpose and scope of the McCarran-Ferguson Act.

---

mission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

**4.** For tests to determine whether a challenged practice is "regulated by state law," *see Dexter v. Equitable Life Assur. Soc'y of U.S.,* 527 F.2d 233, 236–37 (2nd Cir. 1975); *Meicler v. Aetna Cas. & Surety Co.,* 506 F.2d 732, 734–35 (5th Cir. 1975); *Ohio AFL–CIO v. Ins. Rating Bd.,* 451 F.2d 1178, 1181–84 (6th Cir. 1971). Nebraska law clearly regulates the insurance industry. Neb.Rev.Stat. §§ 44–1522 *et seq.* (Reissue 1974) prohibits unfair competition and deceptive trade practices in the insurance business, and Neb.Rev.Stat. §§ 59–801 *et seq.* (Reissue 1974) generally proscribes unlawful restraints of trade. These statutes are broad enough to cover the practices attributed to Foremost. But this finding does not dispose of

Counts V and VI if Foremost's alleged conduct is not pursuant to "the business of insurance."

**5.** "The McCarran-Ferguson Act was passed in reaction to this Court's decision in *United States v. South-Eastern Underwriters Ass'n,* 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). Prior to that decision, it had been assumed, in the language of the leading case, that "[i]ssuing a policy of insurance is not a transaction of commerce." *Paul v. Virginia,* 8 Wall. 168, 183, 19 L.Ed. 357 (1869). Consequently, regulation of insurance transactions was thought to rest exclusively with the States. In *South-Eastern Underwriters,* this Court held that insurance transactions were subject to federal regulation under the Commerce Clause, and that the antitrust laws, in particular, were applicable to them. Congress reacted quickly. . . .

The statute did not purport to make the States supreme in regulating all the activities of insurance *companies*; its language refers not to the persons or companies who are subject to state regulation, but to laws "regulating the *business* of insurance." Insurance companies may do many things which are subject to paramount federal regulation; only when they are engaged in the "business of insurance" does the statute apply. Certainly the fixing of rates is part of this business; that is what *South-Eastern Underwriters* [*United States v. South Eastern Underwriters Ass'n*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440] was all about. The selling and advertising of policies, *FTC v. National Casualty Co.*, 357 U.S. 560, 78 S.Ct. 1260, 2 L.Ed.2d 1540 (1958), and the licensing of companies and their agents, cf. *Robertson v. People of State of California*, 328 U.S. 440, 66 S.Ct. 1160, 90 L.Ed. 1366 (1946), are also within the scope of the statute. (Emphasis in original). *Id.* at 459–60, 89 S.Ct. at 568.

The great majority of the post–1969 decisions analyzing the scope of the McCarran Act exemption have limited Section 1012(b) to practices directly affecting the relationship of insurer and policyholder. Examples of conduct within the meaning of "the business of insurance" include: concerted action in reclassification of risks, *Meicler v. Aetna Cas. & Surety Co.*, 506 F.2d 732 (5th Cir. 1975), aff'ing, 372 F.Supp. 509 (S.D.Tex. 1974); monopolistic prices for title examination and insurance, *Commander Leasing Co. v. Transamerica Title Ins. Co.*, 477 F.2d 77 (10th Cir. 1973); conspiracy to fix prices of automobile insurance premiums, *Ohio AFL–CIO v. Ins. Rating Bd.*, 451 F.2d 1178 (6th Cir. 1971), cert. denied, 409 U.S. 917, 93 S.Ct. 215, 34 L.Ed.2d 180 (1972); conspiracy to impose uniform seller charges for title insurance, *Schwartz v. Commonwealth Land Title Ins. Co.*, 374 F.Supp. 564 (E.D. Pa.1974); conspiracy to inflate the cost of life insurance, *Steingart v. Equitable Life*

*Assur. Soc'y of U. S.*, 366 F.Supp. 790 (S.D. N.Y.1973).

In all of these cases the acts complained of involved the fixing of insurance rates and costs. In *Dexter v. Equitable Life Assur. Soc'y of U. S.*, 527 F.2d 233 (2nd Cir. 1975), the challenged transaction consisted of a tying arrangement conditioning mortgage loans on the purchase of life insurance. As in the cases involving rates, such conduct goes directly to the relationship between the insurer and insured.

■ An argument can be made that the essence of Allied's complaint is that Foremost unfairly interfered with Allied's conduct of "the business of insurance." The question is close and the cases are divided, see *Sanborn v. Palm*, 336 F.Supp. 222 (S.D. Tex.1971). In consideration of the cases on both sides of the issue, the Court declines to extend the McCarran Act exemption to a dispute which should have little or no effect on the interests of policyholders and which primarily involves an agency agreement, not "the contract of insurance."

*Am. Family Assur. Co. of Columbus v. Planned Marketing Assoc.*, 389 F.Supp. 1141 (E.D.Va.1974) supports this Court's conclusions. In that case, one insurance company sought to enjoin another from inducing agents to switch companies and from using certain trade secrets and customer lists. Finding that the challenged conduct amounted only to competition between two companies for business, the Court declined to apply Section 1012(b) to activities which "could easily be employed by one stock brokerage firm against another as by one insurance company against another." *Id.* at 1147.

The plaintiff also argues that business activities not peculiar to the insurance industry are subject to federal regulatory laws by citing *Fry v. John Hancock Mutual Life Ins. Co.*, 355 F.Supp. 1151 (N.D.Tex. 1973). That case has apparently been reversed in an unreported opinion *cited in*

The McCarran-Ferguson Act was an attempt to turn back the clock, to assure that the activities of insurance companies in dealing with their

policyholders would remain subject to state regulation."
*Id.* at 458–59, 89 S.Ct. at 567–68.

*Dexter v. Equitable Life Assur. Soc'y of U. S.*, 527 F.2d 233, 235 n. 4 (2nd Cir. 1975).

*DeVoto v. Pacific Fidelity Life Ins. Co.*, 516 F.2d 1, 3 (9th Cir. 1975), *cert. denied*, 423 U.S. 894, 96 S.Ct. 194, 46 L.Ed.2d 126 (1975), supports Allied's position. In that case, a mortgage banker was persuaded to abrogate its contract with one insurance company to deal exclusively with another for the furnishing of customer lists. These acts, which are similar to those alleged by Allied, were declared peripheral to "the business of insurance" and thus subject to federal antitrust law.

## STATE LAW

Count VII charges violations of Neb.Rev. Stat. §§ 44–1522 *et seq.* (Reissue 1974), specifically Section 44–1525(4)[6] of the Nebraska Unfair Competition and Trade Practices Act governing the insurance business and Neb.Rev.Stat. §§ 59–801 *et seq.* (Reissue 1974) concerning unlawful restraints of trade.

■ While Section 59–821 provides for private antitrust suits and treble damages, it is unclear whether plaintiff also seeks damages by virtue of Section 44–1525(4). Neb.Rev.Stat. §§ 44–1522 *et seq.* does not contemplate private suits, but instead vests powers and duties in the State Director of Insurance, who is empowered to enjoin and penalize certain prohibited acts.

IT IS THEREFORE ORDERED that unless plaintiff amends its complaint within ten (10) days hereof to state a claim for which relief may be granted in Count III, defendant's motion to dismiss Count III will be granted.

IT IS FURTHER ORDERED that defendant's motion to dismiss Counts I, V and VI is denied.

6. This section provides:
"The following shall be unfair methods of competition and unfair or deceptive acts or practices in the business of insurance: . . . (4) Entering into any agreement to commit, or by any concerted action committing any act of boycott, coercion, or intimidation resulting in or tending to result in unreasonable restraint of or monopoly in the business of insurance. . . ."

The Court notes that this language restates 15 U.S.C. § 1013(b), which reserves jurisdiction under the Sherman Act for conduct involving "boycott, coercion or intimidation." *See Addrisi v. Equitable Life Assur. Soc'y of the U. S.*, 503 F.2d 725 (9th Cir. 1974), *cert. denied*, 420 U.S. 922, 95 S.Ct. 1590, 43 L.Ed.2d 790 (1975). As the parties have not properly presented the question of Section 1013(b)'s application, the Court does not reach this issue.