## LAWYER'S REALTY CORPORATION
### v.
## PENINSULAR TITLE INSURANCE CO. et al.

### Civ. A. No. 76–844.

United States District Court,
E. D. Louisiana.

March 22, 1977.

---

Roy S. Lilley, Lea, Lilley & Brainis, Metairie, La., for plaintiff.

Harry B. Kelleher, Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, La., for U. S. Life Title Ins. Co.

Raymond J. Salassi, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Peninsular Title Ins.

Patrick C. Leitz, Metairie, La., for Anthony Taormina.

ALVIN B. RUBIN, District Judge.

A title insurance agent sues two title insurance companies and their Louisiana agent for illegally conspiring in violation of the federal antitrust laws to exclude them from the title insurance business. It contends that it was driven out of business as an agent because the defendants conspired to commit acts that resulted in the cancellation of its title insurance agency license by the Louisiana Commissioner of Insurance.

■ Because the activities that it is charged the defendants engaged in were regulated by the Louisiana Insurance Code, the suit in federal court is barred by the McCarran-Ferguson Act, and the defendants' motion to dismiss is GRANTED. This does not mean that the plaintiff is without redress if his complaint is well-founded. It means only that he must seek his relief in state court for violation of state law.

## I.

■ The McCarran-Ferguson Act, 15 U.S.C.A. § 1012,[1] makes the Sherman[2] and Clayton Antitrust Acts, 15 U.S.C.A. Secs. 1 and 15, applicable to "the insurance business," only "to the extent that such business is not regulated by State law." This in effect exempts those aspects of "the insurance business" regulated by state law from the federal antitrust laws. The exemption extends to title insurance as well as other types of insurance. *Crawford v. American Title Insurance Co.*, 5th Cir. 1975, 518 F.2d 217.[3]

The McCarran-Ferguson Act was passed in response to the decision of the Supreme Court in *United States v. South Eastern Underwriters Association*, 1944, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, holding that the antitrust laws were applicable to price or rate fixing in insurance transactions. That decision was based on the concept that the insurance business is commerce among the states, and hence necessarily adopted the view that the entire interstate insurance industry was subject to federal regulation. Since insurance companies were chartered by the states and the insurance business had long been subject to state regulations varying from state to state, but intricately controlled by statute in many states, Congress reacted by enacting the McCarran-Ferguson Act.

(T)he Act was a compromise between those who wanted Congress to overrule *South-Eastern* explicitly, thereby precluding federal regulation of the insurance business, and those who felt that Congress should enact a comprehensive scheme of federal regulation. Thus, the first section of the Act encourages State regulation and taxation of the business of insurance and implies that the interstate commerce clause shall not be a bar to such state regulation.

1. The McCarran-Ferguson Act provides in pertinent part that "the Sherman Act . . . and the . . . Clayton Act . . . shall be applicable to the business of insurance to the extent that such business is not regulated by State law." 15 U.S.C. Sec. 1012(b).

2. The Sherman Act reads, in pertinent part as follows:
   Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal . . . .
   15 U.S.C.A. Sec. 1.
   The Clayton Act reads, in pertinent part, as follows:
   Any person who shall be injured in his business or property by reason of anything for-bidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.
   15 U.S.C.A. Sec. 15.

3. In *Crawford v. American Title Insurance Co.*, 5th Cir. 1975, 518 F.2d 217, the Court applied the McCarran-Ferguson Act exemption to the title insurance business in the face of allegations of an illegal conspiracy to restrain trade and to fix prices. The field was held covered by the Alabama Insurance Trade Practice Act. 518 F.2d at 219.

Comment, Limits of State Regulation under the McCarran-Ferguson Act, 42 Geo.Wash. L.Rev. 427 (1974).

The Act itself declares the national policy:

> Congress declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

15 U.S.C. § 1011. Congress made its intention clear in the next section of the Act:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . . unless such Act specifically relates to the business of insurance . . *Provided,* That . . . the Sherman Act . . . and . . . the Clayton Act . . . and . . . the Federal Trade Commission Act . . . shall be applicable to the business of insurance *to the extent that such business is not regulated by State law.* (Emphasis supplied)

15 U.S.C. § 1012(b).

The renunciation of federal power is not qualified by any intimation that state regulation may concern only the relationship between insurers and insureds. While state regulation of insurance began with the state's concern for protecting its citizens against unreliable or unscrupulous insurance companies, many states have reached far beyond that primitive stimulus and have adopted statutory plans that regulate the relationship of insurers to their agents and employees, to claimants who are not insureds, and to various aspects of their business from incorporation to dissolution.

Congress might have reserved as much area for federal authority as it chose, but it evidenced no desire to retain federal dominance in any area regulated by the state, whether or not the state's interest was paramount. The area reserved to the states is determined not by its nature or importance but by whether the state has chosen to occupy it.

■ The decision in *Securities and Exchange Commission v. National Securities, Inc.*, 1969, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 669, holds that the McCarran-Ferguson Act did not vest the Securities and Exchange Commission with power to regulate the activities of insurance companies in the sale of stock. The rationale of the decision appears clearly in the opinion:

> The statute did not purport to make the States supreme in regulating all the activities of insurance *companies* ; its language refers not to the persons or companies who are subject to state regulation, but to laws "regulating the *business* of insurance." Insurance companies may do many things which are subject to paramount federal regulation; only when they are engaged in the "business of insurance" does the statute apply.

89 S.Ct. at 568. But the court also gave illustration of what was encompassed within the "business of insurance":

> Certainly the fixing of rates is part of this business; that is what *South-Eastern Underwriters* was all about. The selling and advertising of policies, *FTC v. National Casualty Co.*, 357 U.S. 560, 78 S.Ct. 1260, 2 L.Ed.2d 1540 (1958), *and the licensing of companies and their agents*, cf. *Robertson v. People of State of California*, 328 U.S. 440, 66 S.Ct. 1160, 90 L.Ed. 1366 (1946), are also within the scope of the statute. (Emphasis supplied)

Hence, the logic as well as the language of that case permits the state to regulate the relationship of insurance company and insurance agent.

■ The only decision that holds the federal antitrust acts operative with respect to the activities of an insurance company concerning its agents despite state regulation of that relationship is *American Fam. L. Assur. Co. v. Planned Marketing Associates, Inc.*, E.D.Va.1974, 389 F.Supp. 1141. There the court held:

> State legislation proscribing the very acts complained of will not oust federal jurisdiction unless such acts are peculiar to

the insurance industry. Acts peculiar to the insurance industry would include such things as the relationship between the insurer and the insured, the language and content of an insurance policy, the financial reliability of an insurance company and other similar matters involved in the insurance industry.

389 F.Supp. at 1145. Nothing in the McCarran-Ferguson Act, however, draws a distinction based on whether the subject matter is "peculiar to the insurance industry;" and the court itself indicated that the import of its determination "emasculated" state regulation:

> This court realizes that when it applies the *National Securities* definition of the "business of insurance" to delimit the exclusive applicability of State antitrust and unfair competition acts, it largely emasculates any substantial efficacy in those acts to preclude federal jurisdiction in the anti-trust and unfair competition fields.

389 F.Supp. at 1147. Acts of Congress should be fairly read to effectuate congressional intent; since Congress intended to leave the area regulated by state law to state control, its intention must be given full effect.

The argument that state regulation is pre-emptive only when the state is "doing so adequately" was adopted by Judge Godbold's dissent in *Crawford v. American Title Insurance Company*, 5th Cir. 1975, 518 F.2d at 220; that view was rejected by the majority, whose opinion, less than one year old, is, of course, preclusive. The Fifth Circuit's view is in accord with prevailing opinion, albeit that opinion is sometimes criticized, as illustrated by the comments in a Note, Insurance Regulation and Antitrust Exemptions: McCarran-Ferguson, The Boycott Exception and the Public Interest, 27 Rutgers L.Rev. 140 (1973).

## II.

The Louisiana legislature has enacted what is titled the Louisiana Insurance Code, La.R.S. 22:1, an integrated series of statutes regulating virtually all aspects of the insurance industry including title insurance. See La.R.S. 22:6, 22:71, 22:901, and 22:1406. The purpose of this code is to regulate the insurance business "in all its phases." La. R.S. 22:2. Inter alia, the statute imposes licensing requirements for agents, La.R.S. 22:1161, regulates trade practices "in the business of insurance," La.R.S. 22:1211, and forbids "any trade practice which is defined . . . to be an unfair method of competition or an unfair or deceptive act or practice in the conduct of the business of insurance." La.R.S. 22:1213. Agents are licensed by the Commissioner of Insurance after application, examination and compliance with the other qualifications set out by La.R.S. 22:1167. Licenses must be renewed annually. They are subject to revocation for cause, by a procedure set forth in La. R.S. 22:1173.

■ A proscription of "all unfair methods of competition" encompasses "unauthorized agreements to fix premium rates or monopolistic practices." *Crawford v. American Title Insurance Company*, supra, 518 F.2d at 219. In addition to describing specific acts that are "unfair methods of competition and unfair or deceptive acts or practices" in the business of insurance, La. R.S. 22:1214 makes it an unfair trade practice in the business of insurance to engage in any concerted action" "to result in an unreasonable restraint of, or a monopoly in, the business of insurance." LSA–R.S. 22:1214(4). It further makes it an unfair act to commit "any violation of any prohibitory law of this state." This broad proscription would encompass a violation of Louisiana's antitrust law, La.R.S. 51:122, a statutory parallel to the Sherman Act, which declares:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal.

It thus is apparent that Louisiana has undertaken by state law to forbid the very conduct complained of.

## III.

The difficulty of differentiation between the business of insurance as it concerns the relations between insured and insurer and between insurers and their own agents is illustrated by the allegations made here. The plaintiff contends that there was a conspiracy to restrain trade either through the agency of the Commissioner of Insurance or by his unintentional participation in a scheme devised by the defendants. Proof of these charges would involve investigation of the conduct of the office of the State Commissioner of Insurance in administering the Louisiana Insurance Code. The plaintiffs do not suggest, nor would there be authority to contend, that the licensing of insurance agents is beyond the proper sphere of state regulation. See, *Securities and Exchange Commission v. National Securities, Inc.*, supra, 393 U.S. at 460, 89 S.Ct. at 568. It is the Commissioner's refusal to renew the plaintiff's license that is at the heart of its claim. Any separation of the two legal issues into discrete categories of law, one susceptible to state regulation, the other to federal, is artificial.

■ The propriety of the actions of the Louisiana Commissioner of Insurance is a matter of state, not federal concern. There is no federal interest in the pattern or philosophy of the state regulatory scheme. Congress intended to vacate the field to the state once the state entered it in any way, not to have federal courts supervise the manner in which state officials acted once they entered the close.[4] See *Anderson v. Medical Service of the District of Columbia*, 1976–1 Trade Cases, Para. 60,884.

Accordingly, the defendant's motion to dismiss is GRANTED.

---

4. In *Parker v. Brown*, 1943, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315, the Court held the acts of a state commission exempt from federal antitrust regulation. The *Parker* doctrine derives from construction of congressional intent. The Supreme Court has recently limited the *Parker* exemption. *Goldfarb v. Virginia State Bar*, 1975, 421 U.S. 773, 95 S.Ct. 2004 at 2015, 44 L.Ed.2d 572; *Cantor v. Detroit Edison Co.*, 1976, 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141. Neither of these cases, however, deals with the McCarran-Ferguson Act, where Congress has made explicit its intent to create a broad exemption from the antitrust laws with regard to state regulation of the insurance business. See *Cantor v. Detroit Edison Co., supra* at 608, 96 S.Ct. 3110 (Blackmun, J., concurring).