**Sue Carol ANDERSON, Appellant,**

v.

**AETNA CASUALTY AND SURETY COMPANY, Appellee.**

**No. 16946.**

Court of Civil Appeals of Texas.

Fort Worth.

Sept. 20, 1968.

Rehearing Denied Oct. 18, 1968.

Shannon, Gracey, Wright, Ratliff & Miller, and Harold A. Mueller, Fort Worth, for appellee.

## OPINION

RENFRO, Justice.

Suit was brought by Sue Carol Anderson against Aetna Casualty and Surety Company on a policy issued by Aetna to one Burley Ray Nabors. Previously, plaintiff had recovered a judgment against Nabors for damages growing out of an automobile collision between a car driven by plaintiff and a car driven by Nabors. Aetna denied that Nabors had coverage under the policy in question and refused to defend him. In the current suit both parties moved for summary judgment. Plaintiff's motion was denied; defendant's motion was granted.

The following undisputed facts were established by affidavits, depositions, stipulations and numerous exhibits, all of which are included in the record:

Burley Ray Nabors was convicted of driving while intoxicated on May 24, 1963. His driver's license was suspended and he had not been issued an operator's license during the five year period just preceding August 4, 1967. Nabors made application through his agent, W. H. Turner Insurance Agency, Decatur, for liability insurance. Turner made application through the Assigned Risk plan. Nabors signed a pledge that he would not drive an automobile unless and until his license had been reinstated by the Texas Department of Public Safety. His license was never reinstated, nor was any driver's license issued to him.

Aetna issued and delivered a policy, in which Nabors was named as insured, to the Turner Agency. The coverage was $10,000; $20,000; and $5,000. The policy period was 9/22/65 to 9/22/66. Attached to the policy was Endorsement No. 119. The endorsement was never signed by Nabors. Endorsement No. 119 provided that "the insurance afforded by this policy shall

King & Massey, and Marion L. Massey, Fort Worth, for appellant.

not apply with respect to any claim arising from accidents which occur while any automobile is being operated by BURLEY RAY NABORS" and "This endorsement forms a part of the policy to which attached, effective from its date of issue unless otherwise stated herein." The declarations on the face of the policy show: "Endorsements (attached on reverse side) * * * 119."

Form SR–22 (Financial Responsibility Insurance Certificate) was issued by Aetna and sent to Turner Agency, but was never received and filed by Texas Department of Public Safety. Through Turner Agency, Aetna made numerous efforts to secure the signature of Nabors on No. 119 but was unsuccessful.

The injury to Sue Carol Anderson occurred on October 8, 1965. On November 28, 1966, she obtained a judgment against Nabors in the sum of $16,000. Burley Ray Nabors was the driver of the automobile which was in collision with Sue Carol Anderson. He did not have a driver's license at the time of the collision. The policy was canceled by Aetna April 11, 1966.

Judgment entered by the trial court recites most of the above facts. The court concluded Endorsement 119 was a part of the contract at the time of issuance; that said endorsement was not in conflict with the law; that it excepted from coverage any claim arising from collision while the insured was driving the insured vehicle, and, therefore, the loss sued on by plaintiff was not covered by the policy.

In four points of error the plaintiff argues the court erred: (1) in finding Aetna not liable under the policy; (2) in failing to find absolute liability against Aetna under provisions of Art. 6701h, Vernon's Ann.Tex.Civ.St.; (3) in holding Endorsement 119 to be a part of the insurance contract, and (4) in holding there was no fact issue as to whether Endorsement 119 was in fact a part of the policy issued to Nabors.

As previously stated, the declarations page of the policy recited the attachment of Endorsement 119 thereto. The endorsement was physically attached to the policy and was so attached when the policy was sent to the Turner Agency. The endorsement itself reads that it forms a part of the policy. Nabors accepted the policy with the Endorsement attached and never raised any objection to it.

■ As a general rule, where a rider, slip, or endorsement is physically attached to a policy of insurance contemporaneous with execution, and delivered to the insured as attached, and sufficient reference is made in either the policy or the attached matter to identify the papers as related, the fact that the matter so attached is without the signature of the insurer or its authorized agents will not preclude its inclusion and construction as a part of the insurance contract. 128 A.L.R. 1034–1035.

Texas courts follow the general rule. "It is well established in * * * Texas, and generally, that riders attached to a policy, when delivered, are properly treated as a part thereof, though not independently signed; as the policy signatory is inclusive of all riders." Dunn v. Traders & General Ins. Co., 287 S.W.2d 682 (Tex. Civ.App., 1956, ref., n. r. e.). See also Farris v. Allstate Insurance Co., 265 S.W. 2d 178 (Tex.Civ.App., 1954, no writ hist.).

The undisputed facts of the instant case place it under the general rule. While Nabors' automobile had coverage under the policy while being operated by someone other than Nabors, with his permission, Nabors himself had no coverage under the policy when he was driving the automobile. Perhaps he would have had coverage if he had regained a driver's license during the life of the policy, but he did not obtain a license and that question is not before us.

■ We approve of the court's conclusion that Endorsement 119 was a part of the contract between Aetna and Nabors,

and by reason of said endorsement Nabors was excepted from coverage while driving the automobile.

In support of her contention that Aetna became absolutely liable on the policy under terms and provisions of Art. 6701h, T.R.C.S., plaintiff has set out at considerable length the various provisions of the Act, and ably and persuasively argues that Aetna is liable to plaintiff in spite of the fact that no certificate showing coverage was ever received and filed by the Department of Public Safety.

Plaintiff cites and relies upon Lumbermens Mutual Ins. Co. v. Grayson, 422 S.W. 2d 755 (Tex.Civ.App., 1967, ref., n. r. e.); National Surety Corp. v. Diggs, 272 S.W.2d 604 (Tex.Civ.App., 1954, ref., n.r.e.); McCarthy v. Insurance Co. of Texas, 271 S. W.2d 836 (Tex.Civ.App., 1954, no writ hist.).

The opinion in Lumbermens states: " * * * and on October 23, 1963 *it filed Form SR 22 with the Texas Department of Public Safety,* certifying it had issued Vickers a motor vehicle liability policy as defined in Section 19 of the Safety Responsibility Act." (Emphasis added.)

In Diggs, Chief Justice Massey wrote: "Under the provisions of Article IV, Sec. 19, of the Act, such policies become absolute *upon the filing* with the Department of Public Safety the written certificate of an insurance company * * *." (Emphasis added.)

In McCarthy, Justice Pope said: "Such proof (financial responsibility) may be made by furnishing the Department of Public Safety a certificate showing coverage, and the only provision for absolute insurance occurs in cases where such a certificate has been furnished."

Thus, none of the above cases is controlling.

Proof of financial responsibility may be made by (1) a certificate of insurance as provided in Sections 19 or 20; (2) a bond as provided in Section 24; (3) a certificate of deposit of money or securities as provided in Section 25; (4) a certificate of self-insurance as provided in Section 34. Article 6701h, Sec. 18, T.R.C.S.

No attempt was made to comply with (2), (3), or (4).

Section 19(a) of the Act provides that proof of financial responsibility may be furnished by filing with the Department the written certificate of any insurance company, duly authorized, that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility.

Section 21(a) provides a "motor vehicle liability policy" shall mean an owner's or operator's policy of liability insurance, certified as provided in Section 19 or Section 20 (Section 20 applies to nonresidents) as proof of financial responsibility.

In discussing the reason and necessity for filing the certificate with the Department of Public Safety as provided in Section 19, the Houston Court in Texas Department of Public Safety v. Easton, 404 S.W.2d 609 (Tex.Civ.App., 1966, no writ hist.), held: "An ordinary indemnity or liability insurance policy could be cancelled by the insurer without five days' notice to the Department. The financial responsibility insurance certificate provides for certification by the insurer that it has issued to the named insured a motor vehicle liability policy as required by the financial responsibility laws of this State, and that such policy is in effect on the effective date of the certificate. In giving such certificate the insurance company certifies in effect that the policy issued shall not be cancelled or terminated until at least five days after notice of cancellation or termination of the insurance so certified shall be received by the office of the Department as provided in Section 22 of the Act. This certification is necessary in order that the Department may take immediate action with respect to requiring the maintenance of financial responsibility by

the owner or operator of the motor vehicle when his or her policy is cancelled or about to be cancelled."

The effect of failure to file a certificate of insurance, as set out in the Act and by court decisions, is summarized in 7 Tex. Jur.2d 362–3, § 48, in part as follows: "Proof of future financial responsibility may be made by filing with the department a bond, a certificate of liability insurance, or a certificate of a deposit of money or securities. Where proof of future financial responsibility is made by the filing of a certificate of liability insurance, the safety responsibility law expressly declares that the policy is subject to the following provisions, which need not be contained in the policy: (1) The liability of the insurer, with respect to such insurance, becomes absolute whenever injury or damage covered by the policy occurs; (2) the policy cannot be canceled or annulled, as to such liability, by any agreement between the insurer and the insured after the occurrence of the accident; and (3) no statements made by the insured, and no violations of the policy, may serve to defeat or avoid it. Under the act, however, the insurer may be held absolutely liable only if it has furnished to the department a certificate showing that the insured is covered by a liability policy executed for his benefit. Consequently, where the insurer has failed to furnish such a certificate to the department, it may not then be held absolutely liable. On the contrary, in such a case it may plead, in defense of its alleged liability under the policy, any defenses based on the insured's failure to give notice to it of a suit instituted by a third party, or on the insured's failure to forward to it all related demands or process incident to the suit."

It seems clear to us that since a certificate showing that Nabors was covered by a liability policy executed for his benefit was never furnished to the Department, Aetna cannot be held absolutely liable under the provisions of the Act.

Therefore, Aetna was entitled to its defense that Nabors was expressly excepted from coverage while he was driving the insured vehicle.

We are in accord with the trial court's conclusion that the loss sued on by plaintiff was not covered by the policy.

Affirmed.