(774 P.2d 984)
No. 62,942

TOPEKA TENT AND AWNING CO., *Appellant*, v. THE GLEN FALLS INSURANCE COMPANY, d/b/a THE CONTINENTAL INSURANCE CO., *Appellee.*

Petition for review denied September 29, 1989.

Opinion filed June 2, 1989.

*Frank S. Eschmann* and *Stanley E. Oyler*, of Ascough, Bausch, Eschmann, P.A., of Topeka, for the appellant.

*Robin G. Maxon*, of Davis, Wright, Unrein, Hummer & McCallister, of Topeka, for the appellee.

Before ABBOTT, C.J., LEWIS, J., and C. FRED LORENTZ, District Judge, assigned.

LORENTZ, J.: This is an appeal by Topeka Tent and Awning Company, Inc., (TTA) from a summary judgment that insurance contracts written by The Glen Falls Insurance Company (Glen Falls) excluded coverage of lawsuits claiming employment discrimination.

TTA contracted with Glen Falls for basic insurance coverage for a three-year period from October 1, 1980, until October 1, 1983. In addition, Glen Falls issued an umbrella policy effective for one year. The umbrella policy was renewed two additional times, providing coverage until October 1, 1983. The original endorsement was properly countersigned, as were the renewed endorsements; only the last endorsement was unsigned.

On May 24, 1983, three former employees filed suit against TTA claiming racial discrimination. TTA requested that Glen Falls either defend the suit or provide coverage. This request was denied based on an endorsement attached to the umbrella policy which excluded coverage for liability arising from discrimination suffered by employees of the insured.

The endorsement, although specifically referred to by number on the signed declarations page of the policy, was not itself signed. The endorsement stated that a countersignature by a representative of the insurance company was required to make it binding. The evidence before the trial court included an affidavit that the failure to sign the endorsement was due to inadvertence of the agent.

The basic policy in the general liability section did cover invasion of the "right of private occupancy." TTA alternatively claimed this right of private occupancy included employment discrimination on the theory that employees had a right to occupy their positions of employment.

TTA first contends the trial court committed error in granting summary judgment that the endorsement excluding coverage of employee discrimination was a part of the policy of insurance when it was not countersigned as required by its own terms.

The standards under which summary judgment may be granted are well established.

Summary judgment is proper when the pleadings, interrogatories, depositions, and any admissions or affidavits show there that is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. When reviewing a grant of summary judgment, an appellate court must read the record in the light most favorable to the party who defended against the summary judgment. *Danes v. St. David's Episcopal Church*, 242 Kan. 822, 830, 752 P.2d 653 (1988).

There is no dispute as to the facts concerning the content and form of the insurance contract. Only its meaning is in issue. The issue before us is whether attaching the endorsement without a countersignature and referring to it specifically in the signed declarations page constitute a valid endorsement.

TTA cites no authority to support its contention that an unsigned but attached endorsement should be deemed invalid, and we have been unable to find any Kansas authority on that specific point. Other states have ruled contrary to the position taken by TTA, however. In *Anderson v. Aetna Casualty and Surety Company*, 432 S.W.2d 151, 153 (Tex. Civ. App. 1968), the court held:

"As a general rule, where a rider, slip, or endorsement is physically attached to a policy of insurance contemporaneous with execution, and delivered to the insured as attached, and sufficient reference is made in either the policy or the attached matter to identify the papers as related, the fact that the matter so attached is without signature of the insurer or its authorized agents will not preclude its inclusion and construction as a part of the insurance contract."

A signing of the policy is a signing of all riders properly attached to the policy at the time of the signing. *Automobile Underwriters, Inc. v. Camp*, 217 Ind. 328, 27 N.E.2d 370 (1940). See *Marlin Associates v. Trinity Universal Ins. Co.*, 226 S.W.2d 190, 193-94 (Tex. Civ. App. 1949); *Legare v. West Coast Life Ins. Co.*, 118 Cal. App. 663, 666-67, 5 P.2d 682 (1931).

Because this is a question of first impression in Kansas, we hold the decisions of other states on this issue are appropriate and should be applied here. There is no question as to the meaning of the endorsement. Its language is clear and unambiguous. The endorsement is referred to specifically in the signed policy and was attached to the policy. The lack of a signature on this particular endorsement was due to mere inadvertence. The umbrella policy, with a properly signed endorsement attached, was twice renewed, and TTA should not now be allowed to claim that the attached endorsement was mere surplusage and not binding.

TTA also argues that Glen Falls should be estopped from denying coverage. This issue was previously addressed in *Western Food Prod. Co. v. United States Fire Ins. Co.*, 10 Kan. App. 2d 375, Syl. ¶ 3, 699 P.2d 579 (1985), where this court held: "Waiver and estoppel may be invoked to forestall the forfeiture

of an insurance contract, but they cannot be used to expand its coverage."

TTA next contends that the unsigned endorsement created an ambiguity, thus requiring its construction in TTA's favor. The existence or lack of a signature, however, in no way affects the written language so as to render the endorsement ambiguous. The language is clear and without confusion. This argument is simply without merit.

The final argument advanced by TTA as to the lack of a signature is that failure to sign the endorsement rendered the contract unilateral and invalid. This argument also is without merit. The endorsement was attached and referred to in the signed declarations page of the underlying policy and, as such, became a part of the policy.

In an alternative argument, TTA contends that the basic policy coverage for invasion of the right of private occupancy included the right of its employees to occupy their positions of employment. In the definitions within the policy, "personal injury" is defined as "[w]rongful entry or eviction or other invasion of the right of private occupancy." "Private occupancy" itself is not defined, and TTA claims the court should liberally construe it to include the right to be free from employment discrimination. Again, no authority is cited for this proposition, nor are we able to find any.

As a general rule, the construction and effect of a written contract of insurance is a matter of law to be determined by the court. *American Media, Inc. v. Home Indemnity Co.*, 232 Kan. 737, 658 P.2d 1015 (1983).

The general rule that when an insurance contract is open to different interpretations the interpretation most favorable to the insured must be adopted "does not authorize a perversion of the language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists." *Central Security Mutual Ins. Co. v. DePinto*, 235 Kan. 331, 333, 681 P.2d 15 (1984).

The phrase defining personal injury, as used in the general liability policy, addresses property rights and the right of private occupancy. We hold that to construe private occupancy to mean a right of occupancy of something other than occupancy of prop-

erty, such as occupancy of a position of employment, as urged by TTA, would be an unauthorized perversion of the language.

The trial court properly viewed the question of how the insurance policy should be construed as a matter of law because there were no material issues of disputed fact. Accordingly, the summary judgment finding of the trial court should stand.

Affirmed.