FIRST UNITED BANK OF BELLEVUE, A NEBRASKA BANKING CORPORATION, APPELLANT, V. FIRST AMERICAN TITLE INSURANCE COMPANY, APPELLEE.

496 N.W.2d 474

Filed March 5, 1993.   No. S-90-671.

Daniel D. Walsh, of Walsh, Fullenkamp & Doyle, for appellant.

Brian D. Nolan and Catherine Shugrue-Schaffner, of Hansen, Engles & Locher, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

FAHRNBRUCH, J.

The issue in this appeal is whether First American Title Insurance Company (American Title), is estopped from denying liability under its title policy because it defended, without a reservation of rights, the policyholder's interest in the

covered real estate.

The district court for Sarpy County entered summary judgment in favor of American Title and against its policyholder, First United Bank of Bellevue (First United). The Nebraska Court of Appeals affirmed the trial court. It found that First United had no real interest in the property insured by American Title, and therefore sustained no damage and no loss. See *First United Bank v. First Am. Title Ins. Co.*, 1 NCA 1158 (1992). Further review was granted by this court.

We reverse the Court of Appeals' decision and direct that court to reverse the district court and to remand the cause to the district court with instruction to conduct further proceedings not inconsistent with this opinion.

First United assigns as error in this court that the Court of Appeals erred (1) in holding that First United suffered "no actual loss" under the policy, (2) in failing to hold that American Title was estopped to assert the defense of no actual loss because American Title accepted First United's tender of defense without reservation of rights, (3) in failing to recognize that First United's insured deed of trust would have had full value by virtue of an offer from a third party, and (4) in failing to reverse the district court's order of summary judgment because there existed genuine issues of material fact.

## STANDARD OF REVIEW

In appellate review of summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Properties Inv. Group v. JBA, Inc., ante* p. 439, 495 N.W.2d 624 (1993).

Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Properties Inv. Group v. JBA, Inc., supra.*

## FACTS

The record shows that on December 11, 1986, American

Title issued a title insurance policy to First United in the principal amount of $33,000. The policy insured a deed of trust given by Kenneth L. Hindman and Janette A. Hindman, as Trustors, in favor of John Daum, Trustee, and First United as Beneficiary, in the amount of $49,423.98. This deed of trust, dated November 24, 1986, was recorded December 11, 1986, in the Office of the Recorder, Dallas County, Iowa. The property covered was a 10 acre tract, referred to in the proceedings as Parcel A.

Under the policy, American Title insured First United against loss or damage by reason of:

2. any defect in or lien or encumbrance on such title;

. . . .

6. the priority of any lien or encumbrance over the lien of the insured mortgage. . . .

The policy, however, excluded the following from its coverage:

3. defects, liens, encumbrances, adverse claims, or other matters . . . . (c) resulting in no loss or damage to the insured claimant . . . .

The title insurance policy stated that the property was subject to the following superior liens: (1) a mortgage held by the Bank of Bellevue for $60,865.82, which was recorded January 6, 1986, and (2) an earlier mortgage to First United for $58,885.10, recorded April 28, 1986.

On February 16, 1988, Southwest Bank and Trust of Omaha (Southwest), a creditor not listed in the policy, filed a foreclosure action in the district court for Dallas County, claiming that it had a lien on the property superior to all other liens on the property.

On February 26, 1988, First United demanded that American Title perform its duty under the policy and defend First United in the foreclosure action. First United also demanded that American Title pay the full amount of the policy in the event that Southwest prevailed in its foreclosure action.

On March 2, 1988, Joseph McNamara, American Title's regional vice president and legal counsel in Omaha, accepted First United's tender of defense. McNamara hired Iowa counsel Gregory Hulse to defend First United in the foreclosure action. American Title did not enter into any reservation of rights with

First United, nor did it send notice of such reservation.

On April 6, 1988, Bank of Bellevue, which also held liens on Parcel A and other property owned by the Hindmans, offered to sell its interest in Parcel A, the adjacent property (Parcel B), and a fourplex in Des Moines, Iowa, to First United for $70,708.71. On April 25, 1988, Robert Doyle, secretary of First United, wrote to Hulse and forwarded the offer which had been received from Bank of Bellevue. Doyle conceded that Parcel A was "not worth $60,000.00, much less the $72,000.00 lien of the Southwest Bank and Trust Company." However, Doyle informed Hulse that

> [i]n our opinion, the value of the three properties sufficiently exceeds the $70,708.71 in an amount sufficient to provide the First United Bank with an equity of approximately $35,000.00 for the Note and Deed of Trust for which the Title Insurance was written. In our opinion, the security is not there if the property being foreclosed by the Southwest Bank and Trust Company is removed from the package.

On August 2, 1988, the district court for Dallas County entered a decree of foreclosure which foreclosed all of First United's rights in the property. The district court made a finding that on September 13, 1985, Southwest had filed in the Office of the Recorder in Dallas County an acknowledgement and an assignment of rents on Parcel A. It held that these filings put First United on notice of Southwest's deed of trust filed on July 31, 1987. The decree further found that Southwest's lien was prior and superior to First United's and that Southwest had a lien in judgment for the amount of $68,207.27, plus interest and costs.

On October 5, 1988, pursuant to the decree of foreclosure, the sheriff of Dallas County sold Parcel A to Southwest Bank for the sum of $55,000.

On March 14, 1989, American Title sent a letter to First United denying its claim under the title insurance policy. The letter stated two reasons for denial of the claim: (1) First United did not suffer a loss, and (2) First United had knowledge of a certain title search prepared by American Title's agent, Record Data of Nebraska, Inc., which title search was attached to the

March 14, 1989, letter. This title search had been prepared on April 8, 1986, and showed the interests held by Southwest at that time.

On June 20, 1989, First United sued American Title, requesting judgment for $33,000, plus prejudgment interest and attorney fees. American Title answered alleging that First United had suffered no loss or damage. First United replied, alleging that American Title was equitably estopped from denying coverage under the policy and from asserting any of its nine affirmative defenses because American Title had unconditionally accepted First United's tender of defense in the foreclosure action, and because American Title had failed to provide First United with timely notice of its intention to disclaim liability. The trial court entered summary judgment in favor of America Title and against First United.

On appeal, the Nebraska Court of Appeals rejected First United's estoppel argument and affirmed the order of the district court. This court granted First United's petition for further review, limited to the issue of whether American Title is estopped from asserting its defense of no actual loss under the policy of title insurance.

## ANALYSIS

American Title correctly contends that a title insurance policy is a contract of indemnity and not of guaranty, and that unless and until an actual loss occurs a title insurer incurs no liability. See, *Blackhawk Prod. v. Chicago Ins.*, 144 Wis. 2d 68, 423 N.W.2d 521 (1988); *Grunberger v. Iseson*, 429 N.Y.S.2d 209, 75 A.D.2d 329 (1980). We first consider whether First United could show a loss resulting from Southwest's unexpected lien. This First United could not do, because even without the Southwest lien, Parcel A would have produced almost $70,000 less than needed to satisfy the mortgages ahead of First United's mortgage.

It is uncontroverted that Parcel A had not only the "surprise" superior lien of Southwest Bank attached to it, but two additional liens which were prior in time to the interest at bar held by First United. Parcel A sold for $55,000 at the sheriff's sale to satisfy Southwest's $68,207.27 lien. An affidavit

of a real estate appraiser indicated that the fair market value of the property never exceeded $50,000.

The four liens on the property totalled some $237,382.17. First United's lien at issue was the last of the four, with $187,958.19 of liens ahead of it, all of which could not be satisfied from a parcel of land worth only $50,000.

The total value of the liens superior to First United's obviously far exceeded the value of the property in question. Even excluding Southwest's surprise lien there were two liens, totalling $119,750.92, which held positions superior to First United's lien at issue. A subsequent mortgagee's security is limited to the mortgagor's equity in the property, that is, the value of the mortgaged property in excess of the amount of the prior mortgages. See, *Blackhawk Prod. v. Chicago Ins., supra*; *Ferrell v. Inter-County Title Guaranty & Mtg. Co.*, 213 So. 2d 518 (Fla. App. 1968). Hence, First United had no real interest in the property insured by American Title, and therefore suffered no damage as a result of the omission of the interest of Southwest Bank in the title policy.

However, that does not totally resolve this case. First United contends that American Title is estopped from denying coverage because it undertook First United's defense in the foreclosure action without a reservation of rights, to First United's prejudice. The doctrine of equitable estoppel was discussed in *National Union Fire Ins. Co. v. Bruecks*, 179 Neb. 642, 653-54, 139 N.W.2d 821, 828-29 (1966), in which this court stated:

> " '[A]n equitable estoppel rests largely on the facts and circumstances of the particular case, and consequently any attempted definition usually amounts to no more than a declaration of an estoppel under those facts and circumstances. * * * The following, however, may be ventured as the sum of all cases: That a person is held to a representation made or a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances of the case, has, in good faith, relied thereon. Such an estoppel is founded on morality and justice, and especially concerns conscience and equity.' . . . "

As a general rule, the doctrine of estoppel may not be used to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom. See, e.g., *Nieves v. Intercontinental Life Ins. Co. of P.R.*, 964 F.2d 60 (1st Cir. 1992); *Pennsylvania Nat. v. Kitty Hawk Airways*, 964 F.2d 478 (5th Cir. 1992); *City of Carter Lake v. Aetna Cas. and Sur.*, 604 F.2d 1052 (8th Cir. 1979); *Braun v. Annesley*, 936 F.2d 1105 (10th Cir. 1991); *Midwest Office Tech. v. Am. Alliance Ins.*, 437 N.W.2d 555 (Iowa 1989); *Texas Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601 (Tex. 1988); *Hoeft v. United States Fire Ins. Co.*, 153 Wis. 2d 135, 450 N.W.2d 459 (1989); *Tradewinds Constr. v. Newsbaum*, 606 So. 2d 708 (Fla. App. 1992); *Lumber Transport v. International Indem.*, 203 Ga. App. 588, 417 S.E.2d 365 (1992); *Egnatz v. Medical Protective Co.*, 581 N.E.2d 438 (Ind. App. 1991); *Topeka Tent & Awning Co. v. Glen Falls Ins. Co.*, 13 Kan. App. 2d 553, 774 P.2d 984 (1989); *Holland Corp., Inc. v. Maryland Cas. Co.*, 775 S.W.2d 531 (Mo. App. 1989). Therefore it would seem that the estoppel argument would be of no avail to First United, since the policy expressly excludes coverage unless a loss can be demonstrated.

A widely recognized exception to the general estoppel rule is that when an insurance company assumes the defense of an action against its insured, without reservation of rights, and with knowledge, actual or presumed, of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of non-coverage. See, e.g., *Pennsylvania Nat. v. Kitty Hawk Airways, supra*; *City of Carter Lake v. Aetna Cas. and Sur., supra*; *Sauer v. Home Indem. Co.*, 841 P.2d 176 (Alaska 1992); *American General v. Progressive Cas.*, 110 N.M. 741, 799 P.2d 1113 (1990); *American Home Assur. v. Ozburn-Hessey*, 817 S.W.2d 672 (Tenn. 1991); *Stonewall Ins. v. Palos Verdes Estates*, 7 Cal. App. 4th 309, 9 Cal. Rptr. 2d 663 (1992); *Doe v. Illinois St. Med. Inter-Insurance*, 234 Ill. App. 3d 129, 599 N.E.2d 983 (1992); *Admiral Ins. v. Columbia Ins.*, 194 Mich. App. 300, 486 N.W.2d 351 (1992); *Farmers Texas County Ins. Co. v. Wilkinson*, 601 S.W.2d 520 (Tex. Civ. App. 1980).

The exception to the general estoppel rule applies when an insured is able to show (1) that the insurer had sufficient

knowledge of facts or circumstances indicating non-coverage, (2) that the insurer assumed or continued defense of the insured without obtaining an effective reservation of rights agreement, and (3) that the insured suffered some type of harm or prejudice. See *Pennsylvania Nat. v. Kitty Hawk Airways, supra.*

Applying this test to the facts of this case, First United must first show that American Title had sufficient knowledge of facts or circumstances which would have indicated that First United's claim was not covered under the policy of title insurance issued by American Title. We first note that American Title seeks to impute knowledge of the existence of Southwest's lien to First United based upon a report by Record Data of Nebraska, Inc., an agent of American Title. It would seem reasonable, therefore, to impute the same knowledge to American Title.

Moreover, the record shows that on March 11, 1988, one of American Title's attorneys of record sent a letter to Hulse indicating that an investigation of the case had already been done at that time, that American Title was aware of Record Data's 1986 report showing Southwest's interests, and that Record Data was American Title's agent. American Title was therefore aware of facts constituting a ground for non-coverage by March 11, 1988, at the latest. Accordingly, American Title apparently had both constructive and actual knowledge of facts which would have permitted it to deny coverage at the time it assumed the defense of First United, or very shortly thereafter. This satisfies the first prong of the test.

Under the second prong of the test, First United must show that American Title assumed or continued the defense of the foreclosure action against First United without an effective reservation of rights agreement.

It is uncontroverted that American Title failed to obtain a reservation of rights agreement from First United. In addressing First United's estoppel argument, the Court of Appeals stated:

> [W]e find that whether the Title Company was estopped to deny coverage *is irrelevant* because it assumed [First United's] defense without sending [First United] a

reservation of rights. Estoppel may not be used to bring the claim within the terms of the policy, where it is clear that no loss existed.

(Emphasis supplied.) *First United Bank v. First Am. Title Ins. Co.*, 1 N.C.A. at 1166.

Although the Court of Appeals correctly stated the general rule of estoppel, we disagree that it was "irrelevant" that American Title assumed First United's defense without notifying First United of a reservation of rights. On the contrary, this case exemplifies the precise situation in which a reservation of rights is essential to protect the interests of both the insured and the insurer.

> Reservation of rights is a means by which prior to a determination of the liability of the insured, the insurer seeks to suspend the operation of waiver and estoppel. When coverage is in doubt, the insurer may offer to defend the insured, reserving all of its policy defenses in case the insured is found liable. Upon such notification the insured may either accept the reservation of rights and allow the company to defend or it may reject the reservation of rights and take over the defense itself.

*City of Carter Lake v. Aetna Cas. and Sur. Co.*, 604 F.2d at 1060, n.7. The policy reasons underlying reservation of rights are two-fold: (1) to allow an insured to more ably protect its own interests by retaining control over its own defense, and (2) to avoid conflicts of interest between the insurer and its insured. *Id.*

The record shows, and American Title does not dispute, that First United had an opportunity to protect its own interests by accepting an offer from the Bank of Bellevue. Even though First United notified American Title of the offer, American Title did not endeavor to negotiate on behalf of its insured, nor was American Title prompted to send any reservation of rights at that point. It is obvious that, by relying on American Title's unconditional defense, First United was denied the opportunity to control its own defense and protect its own interests.

Moreover, the record indicates that, while American Title was controlling First United's defense, American Title was collecting data which would only be relevant in litigation

against its insured. For example, American Title requested First United to explain how it had suffered a loss under the policy. This was not an issue in Southwest's foreclosure action against First United, but is a central issue in American Title's denial of coverage to its insured and First United's resulting breach of contract suit. Such conduct on the part of American Title at least raises the inference of divided loyalties.

American Title's failure to obtain a reservation of rights agreement from First United, far from being irrelevant, was in clear violation of the policy considerations underlying such agreements. Thus, the second prong of the test is satisfied.

Finally, First United must show that it was harmed or prejudiced in some way by American Title's actions. If First United has not been prejudiced, there is no ground for the assertion of estoppel.

The Nebraska Supreme Court addressed the issue of prejudice to the insured in *National Union Fire Ins. Co. v. Bruecks, supra,* a case somewhat similar to the present one. In *Bruecks,* a young man was injured when a hunting companion's gun went off in the car they were occupying. National Union had issued a personal liability policy covering the companion for $50,000. After agreeing to defend the policy holder, and doing so for some 17 months, National Union denied coverage claiming that accidents of the nature of the shooting were excluded by the policy. The trial court held that National Union was estopped to deny coverage.

This court rejected National Union's contention that estoppel was inappropriate because there was no evidence that the insured acted or failed to act to his detriment in reliance upon National Union's acts. Instead, the court stated that "the *assumption of complete control* of the matter for a period of 17 months, *with the consequent need of cooperation* with National under the terms of the policy, *in itself constituted a sufficient showing of prejudice.*" (Emphasis supplied.) *Id.* at 654, 139 N.W.2d at 829. The court concluded that National Union's conduct "[was] a most persuasive argument for the operation of the doctrine of equitable estoppel. . . . [and] that by its conduct National construed the policy to provide coverage . . . ." *Id.* at 653, 139 N.W.2d at 828.

Similarly, we now hold that American Title's assumption of complete control of a matter involving a possible claim for over 12 months, with the consequent need of cooperation under the terms of the policy, and without a reservation of rights agreement, constitutes a sufficient showing of prejudice as a basis for urging estoppel. Furthermore, American Title's conduct deprived First United of the opportunity to otherwise protect its interests by entering into negotiations with Bank of Bellevue.

First United has satisfied all three requirements for application of the doctrine of estoppel to American Title's defense of non-coverage under the policy. Moreover, the facts of this case, like those in *Bruecks*, present a highly persuasive argument for the operation of the doctrine of estoppel. We therefore adopt the exception to the general rule of estoppel and hold that when an insurance company assumes the defense of an action against its insured, without reservation of rights, and with knowledge, actual or presumed, of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of non-coverage. Based on the recited uncontroverted facts, American Title is estopped from raising the defense of non-coverage to First United's suit on the policy.

## CONCLUSION

Because of our holding that First United was necessarily prejudiced by American Title's conduct, it was error for the district court to enter summary judgment in favor of American Title. By its conduct, American Title has construed its policy to provide coverage to First United. The only genuine issue of material fact, then, is the extent of First United's damages, if any, as a result of its lost opportunity to cover or mitigate its loss through negotiations with the Bank of Bellevue. We therefore reverse the Court of Appeals, with directions to reverse the district court, and to remand the cause for trial on the issue of First United's damages. Pursuant to Neb. Rev. Stat. § 44-359 (Reissue 1988), the appellee is ordered to pay $3800 toward appellant's attorney fees.

REVERSED AND REMANDED WITH DIRECTIONS.