# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2632

_____

McShane Construction Company, LLC

*Plaintiff - Appellant*

v.

Gotham Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 10, 2017
Filed: August 11, 2017

_____

Before RILEY, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

McShane Construction, LLC (McShane), a general contractor, sued Gotham Insurance Company (Gotham) directly for failing to pay its insurance claim related to the alleged improper installation of a fire protection and suppression system by one of McShane's subcontractors, Mallory Fire Protection Services (Mallory)—whom

McShane has sued separately in Nebraska state court. The district court[1] granted Gotham's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, and McShane now appeals. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

In 2012, McShane began general contract work on the construction of a 196-unit, $15 million apartment complex (Project) in Omaha, Nebraska. McShane hired Mallory as a subcontractor to design and install a fire suppression and protection system for the Project.

McShane and Mallory executed a subcontract on June 8, 2012, that included a provision requiring Mallory to obtain insurance policies and to list McShane as an Additional Insured on the Commercial General Liability (CGL) insurance policy. Mallory subsequently purchased and Gotham issued on September 15, 2012, Gotham Policy No. GL2012FSC00451(Policy) to fulfill this requirement. The "Additional Insured" endorsement modified the insurance provided under the "Commercial General Liability Coverage Part." It listed "Blanket where required by written contract"—which includes McShane since it contracted with Mallory—as the Additional Insured, and Gotham provided McShane with a Certificate of Liability Insurance verifying McShane as an Additional Insured.

---

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

Under its subcontract with McShane, Mallory designed and installed a fire suppression and protection system, which McShane determined was faulty. To replace the faulty system, McShane removed previously installed drywall and installation leading to damages and losses that McShane alleges exceed $614,291.17.

Mallory and McShane each filed independent claims with Gotham to cover the damages and losses. Gotham eventually combined the two claims into a single claim with Mallory listed as the insured. After a comprehensive adjustment process including McShane, Gotham's primary adjuster for this claim sent a final report recommending payment of $499,453.57 "for payment of the claim relating to the improper installation of the fire sprinkler system." Gotham subsequently stopped communicating with McShane other than through an attorney and ultimately refused to provide McShane with a formal coverage determination.

McShane filed this lawsuit on December 23, 2014, asserting eight causes of action including (in the order asserted by McShane) violation of the Nebraska Unfair Insurance Trade Practices Act (Count 1), violation of the Nebraska Unfair Insurance Claims Settlement Practices Act (Count 2), violation of the implied covenant of good faith and fair dealing (Count 3), a claim for attorney's fees under Neb. Rev. Stat. § 44-359 (Count 4), breach of contract (Count 5), waiver and estoppel (Count 6), a claim under the rescue doctrine (Count 7), and declaratory relief (Count 8).

On March 29, 2016, the district court granted Gotham's motion to dismiss all counts. McShane subsequently filed a Federal Rule of Civil Procedure 59(e) motion to reconsider and vacate the judgment, which the district court denied on May 9, 2016. McShane now appeals.[2]

---

[2]McShane has not appealed dismissal of counts 4 and 8.

## II. Analysis

We review de novo the district court's grant of a motion to dismiss, "accepting as true the complaint's factual allegations and granting all reasonable inferences to the non-moving party." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir. 2009).

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Two working principles underlie the analysis: (1) the court's obligation to accept the non-movant's allegations as true "is inapplicable to legal conclusions," such that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"; and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss, . . . [and] [d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 678-79.

We find that the district court's dismissal of all counts was proper. To explain, we will group McShane's six remaining causes of action into (A) statutory claims, (B) those pertaining to breach of contract, and (C) waiver and estoppel.

*A. Statutory Claims*

Two of McShane's claims are based upon Nebraska statutes that provide no private right of action and thus, are subject to dismissal for failing to state a claim upon which relief can be granted. In asserting its claim under Nebraska's Unfair Insurance Trade Practices Act, McShane alleges that Gotham has "not been forthright, truthful, or timely in its adjustment of . . . the [] claims," and alleges that Gotham has acted in bad faith in violation of Neb. Rev. Stat. § 44-1525(9). In asserting its claim under Nebraska's Unfair Insurance Claims Settlement Practices Act, McShane alleges that Gotham violated Neb. Rev. Stat. § 44-1540 which lists numerous acts or practices that may be considered unfair claims settlement practices under Nebraska law.

However, neither of these statutes provides McShane with a private right of action. In Nebraska, "[w]hether a statute creates a private right of action depends on the statute's purpose and whether the Legislature intended to create a private right of action." Prof'l Mgmt. Midwest, Inc. v. Lund Co., 826 N.W.2d 225, 233 (Neb. 2012). The Nebraska Unfair Insurance Trade Practices Act "does not contemplate private suits, but instead vests powers and duties in the State Director of Insurance, who is empowered to enjoin and penalize certain prohibited acts." Allied Fin. Servs., Inc. v. Foremost Ins. Co., 418 F. Supp. 157, 162 (D. Neb. 1976). Likewise, "[t]he purpose of the Unfair Insurance Claims Settlement Practices Act is to set forth standards for the investigation and disposition of claims arising under policies issued to residents of this state," and no private right of action is provided by the Nebraska legislature under this statute. Neb. Rev. Stat. § 44-1537. Therefore, both of these claims were properly dismissed because neither rests upon a private right of action and thus, both fail to state a claim upon which relief can be granted.

## B. Breach of Contract and Related Claims

McShane asserts four claims arising from the insurance agreements including (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) failure to recognize third-party beneficiary status, and (4) mitigation. McShane argues that "[t]here is an absence of a reasonable basis for [Gotham's] failure to assume and pay for damages . . . sustained by McShane" and alleges that Gotham "breached its obligations and duties [under the Policy] to McShane as an Additional Insured . . . and/or [as] a Third Party Beneficiary."

### 1. Breach of Contract

In Nebraska, "[t]he meaning of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court." Auto-Owners Ins. Co. v. Home Pride Cos., 684 N.W.2d 571, 575 (Neb. 2004). "In construing insurance policy provisions, a court must determine from the clear language of the policy whether the insurer in fact insured against the risk involved." Id. "In an appellate review of an insurance policy, the court construes the policy as any other contract to give effect to the parties' intentions at the time the writing was made." Id. "Where the terms of a contract are clear, they are to be accorded their plain and ordinary meaning." Id.

Here, McShane is listed as an "Additional Insured" under the Policy. In Nebraska, "[s]ubject to restrictions in the additional insured endorsement, an additional insured has the same coverage rights and obligations as the principal insured under the policy." Federated Serv. Ins. Co. v. Alliance Constr., LLC, 805 N.W.2d 468, 476 (Neb. 2011). Thus, McShane has the same liability coverage as Mallory under the parts of the Policy applicable to McShane. The Additional Insured

endorsement includes McShane as an Additional Insured "only with respect to *liability* for 'bodily injury,' 'property damage' or 'personal and advertising injury' caused . . . by . . . [Mallory's] acts or omissions or . . . acts or omissions of those acting on [Mallory's] behalf." (emphasis added).

The nature of the Policy as a third-party liability policy is evident in its language. "A 'first-party insurance' policy protects the insured from his or her own losses, while a 'third-party' policy provides liability insurance that protects the insured from claims resulting from the losses of others." Metro Renovation, Inc. v. Allied Grp., Inc., 389 F. Supp. 2d 1131, 1132 n.2 (D. Neb. 2005) (citing Douglas R. Richmond, Trust Me: Insurers Are Not Fiduciaries to Their Insureds, 88 Ky. L.J. 1, 2 (2000)). "In the third-party situation, the insurance company will typically have the power to defend and control litigation regarding the claims of strangers asserted against the insured." Id. Here, the Policy states, "We will pay those sums that the insured becomes *legally obligated to pay* as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (emphasis added). Likewise, the "Additional Insured" endorsement says that the additional insureds are covered "only with respect to *liability*." (emphasis added). Thus, the policy covers liability to third parties, not first-party losses.

The Nebraska Supreme Court has determined in a case involving an insurance contract with similar language that the insurance company "[did] not have an obligation to pay for all acts committed by the insured even though the act by the insured may produce an injury covered by the policy" because "until it is determined that [the insured] is legally obligated to pay . . . , the question of [the insurance company's] obligation is uncertain and contingent." Allstate Ins. Co. v. Novak, 313 N.W.2d 636, 639 (Neb. 1981). Here, McShane fails to plausibly allege that any third party obtained a judgment denoting a legal obligation for McShane to pay. Because McShane failed to allege a legal obligation to pay covered under the terms of the Policy, the district court properly granted Gotham's motion to dismiss.

## 2. *Good Faith and Fair Dealing*

McShane accuses Gotham of "an act or series of acts performed in bad faith." The Nebraska Supreme Court has stated that "in order to establish a claim for bad faith, a plaintiff must show an absence of a reasonable basis for denying the benefits of the insurance policy and the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." LeRette v. Am. Med. Sec., Inc., 705 N.W.2d 41, 47-48 (Neb. 2005) (internal quotation marks omitted). Here, McShane fails to allege that Gotham lacked a reasonable basis for denying benefits because it failed to state a plausible claim that McShane was *legally obligated to pay* damages covered under the Policy. Therefore, McShane failed to plausibly claim the absence of a reasonable basis for denying the benefits, so its claim of bad faith is properly dismissed.

## 3. *Third-Party Beneficiary*

In addition to its claims as an Additional Insured, McShane claims that it is a third-party beneficiary to other parts of the Policy not covered by the Additional Insured endorsement. "In order for those not named as parties to a contract to recover thereunder as third-party beneficiaries, it must appear by express stipulation or by reasonable intendment that the rights and interests of such unnamed parties were contemplated and provision was made for them." Props. Inv. Grp. of Mid-Am. v. Applied Commc'ns, Inc., 495 N.W.2d 483, 488 (Neb. 1993). "A third-party beneficiary's rights depend upon, and are measured by, the terms of the contract between the promisor and promisee." Haakinson & Beaty Co. v. Inland Ins. Co., 344 N.W.2d 454, 458 (Neb. 1984) (internal quotation marks omitted). "The right of a third party benefitted by a contract to sue thereon rests upon the liability of the promisor, which must affirmatively appear from the language of the instrument when

properly interpreted or construed . . . ." Osmond State Bank v. Uecker Grain, Inc., 419 N.W.2d 518, 520 (Neb. 1988) (internal quotation marks omitted).

Here, McShane claims third-party beneficiary status under Part D of the Policy, in which Mallory is the promisee and Gotham the promisor. Part D is an endorsement modifying the CGL coverage and titled "Coverage D—Errors and Omissions Liability." Part D says Gotham will pay "those sums that the insured becomes legally obligated to pay as damages because of errors or omissions committed by the Insured resulting from the services provided in the declarations." The "declarations" lists "fire suppression" as the "form of business."

McShane fails to plausibly allege that its rights and interests were contemplated when Mallory and Gotham entered into the portion of the Policy agreement pertaining to Mallory's errors or design liability. McShane alleges no "express stipulation" that it is included in Part D—even though McShane is expressly included in other parts of the Policy. Instead, the Additional Insured endorsement includes McShane as an Additional Insured using language that corresponds to coverage provided only under Section I, Parts A and B of the Policy—not Part D. The language does not mention coverage for Mallory's "errors," for which Mallory has coverage under the "Errors and Omissions Coverage Extension" endorsement in Part D. Therefore, McShane fails to plausibly allege that the terms of the Policy demonstrate a "reasonable intendment" to include McShane in Mallory's Errors and Omissions coverage or allege that such coverage "affirmatively appear[s] from the language of the [Policy]," so Gotham's motion to dismiss was properly granted. Id.; Applied Commc'ns, 495 N.W.2d at 488.

### 4. Mitigation

McShane's mitigation claim was first framed under the rescue doctrine. McShane's claim under the rescue doctrine is without merit because the rescue

doctrine is inapplicable to the facts of this case. "The rescue doctrine contemplates a voluntary act by one who, in an emergency and prompted by spontaneous human motives to save human life, attempts a rescue which he had no duty to attempt by virtue of a legal obligation or duty fastened on him by his employment." Buchanan v. Prickett & Son, Inc., 279 N.W.2d 855, 858 (Neb. 1979). Here, no facts alleging an "emergency . . . prompt[ing] . . . spontaneous human motives to save human life" were cited by McShane.

Apparently recognizing that the rescue doctrine is inapplicable, McShane argues that it meant to claim mitigation of damages and that the claim was mislabeled in the complaint. McShane cites a case that we decided under Missouri law, Slay Warehousing Co. v. Reliance Insurance Co., 471 F.2d 1364 (8th Cir. 1973), for the proposition that it should be compensated for mitigation of damages. However, Slay provides no help to McShane, because the Slay policy included language expressly requiring mitigation by the insured, while McShane fails to identify any similar express language in the Gotham Policy. Id. at 1365. "Even assuming [McShane] had an implied duty to mitigate or prevent damages, the [Gotham] policy expressly placed the burden of such costs on [McShane]." Clarinet, LLC v. Essex Ins. Co., 712 F.3d 1246, 1250 (8th Cir. 2013). Specifically, the Policy expressly states, "No insured will, *except at the insured's own cost*, voluntarily make a payment, assume an obligation, or incur any expense, other than for first aid, without our consent." (emphasis added). From a policy standpoint, this makes sense as a business decision of the insurance company to prevent the insured from uncontrolled expenditures in the name of mitigation without the insurance company's input.

Likewise, McShane's decision to proceed with repairs prior to the determination of any legal obligation or entry of judgment was a business decision. McShane may be right that it was required to comply with building codes and contractually obligated to the owner of the Project. But McShane's remedy is to sue Mallory, not the insurance company directly. McShane is properly a claimant, not an

insured under the Policy for Mallory's errors and omissions. Further, the Policy does not cover contractual liability saying, "This insurance does not apply to . . . 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." McShane can and has sued Mallory to recover its losses. McShane has failed to state a basis for which its alleged mitigation could give it the right to successfully sue Mallory's insurance company directly for Mallory's alleged errors.

For the reasons stated above, McShane has failed to state a claim for which relief can be granted with regard to its breach of contract theories, and we affirm the district court's dismissal of those counts.

## C. Waiver and Estoppel

McShane alleges that Gotham waived denial of coverage or should be estopped from denying coverage to McShane under the Policy because McShane detrimentally relied upon Gotham and the Policy in its decision to hire Mallory. McShane also argues reliance because Gotham engaged in a long claim-adjustment process with McShane delaying its lawsuit against Mallory, caused McShane to expend resources during the prolonged adjustment, and engaged in "other related conduct" indicating Gotham did not dispute the claim during the adjustment process.

The complaint fails to plausibly allege waiver here. The Nebraska Supreme Court has stated:

> A waiver is a voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct. We have long held that an insurer may waive any provision of a policy that is for the insurer's benefit, including vacancy provisions. Ordinarily, to establish a waiver of a legal right, there must be a *clear, unequivocal, and decisive act* of a party showing such a

-11-

purpose, or acts amounting to an estoppel on his or her part. A party may waive a written contract in whole or in part, either directly or inferentially. A party may prove the waiver by (1) a party's *express declarations* manifesting the intent not to claim an advantage or (2) a party's neglecting and failing to act so as to *induce the belief that it intended to waive*.

D & S Realty, Inc. v. Markel Ins. Co., 789 N.W.2d 1, 17-18 (Neb. 2010) (emphases added).

Here, McShane does not plausibly allege that Gotham waived its rights under the Policy. First, there is no allegation of an express declaration by Gotham waiving its right to deny McShane's claim. Second, while McShane may have believed that Gotham intended to pay for McShane's damages, McShane alleges no clear, unequivocal, and decisive acts by Gotham indicating that it intended to waive its right to deny the claim. To be sure, Gotham did engage in a comprehensive adjustment process investigating the reasonableness of McShane's claimed costs. However, Gotham's communications indicate that it was defending Mallory, with Mallory being named as the "Insured" in the communications and with the claim being consolidated into the claim number with Mallory listed as the "Insured." For example, the "Final Report" letter that resulted from the adjustment process and recommending $499,453.57 in payment clearly lists Mallory as the "Insured," not McShane. As another example, McShane's May 20, 2013, demand letter to Mallory says Mallory should submit the costs for reimbursement on "[Mallory's] general liability policy." McShane thus understood that the adjustment process was occurring under Mallory's policy. Finding no plausible allegation in the complaint of a clear, unequivocal, and decisive act by Gotham to justify any assumptions McShane may have made regarding Gotham's intent to waive its right to deny the claim, we affirm the district court's dismissal of the waiver claim.

Likewise, we find that McShane has failed to sufficiently allege that Gotham should be estopped from denying McShane's claim. Estoppel in Nebraska is defined generally by six elements: (1) calculated false representation or concealment of material facts, (2) intention or expectation that the other party will act upon or be influenced by the first element, (3) knowledge of the real facts, (4) lack of knowledge (or means of knowledge) of the truth as to the real facts, (5) good faith reliance upon the conduct or statements of the party to be estopped, and (6) resulting change in the position or status of the party claiming estoppel. Am. Family Mut. Ins. Co. v. Regent Ins. Co., 846 N.W.2d 170, 192-93 (Neb. 2014). "[E]stoppel cannot be invoked to expand the scope of coverage of an insurance contract absent a showing of detrimental *good faith reliance* upon statements or conduct of the party against whom estoppel is invoked which reasonably led an insured to believe coverage was present." Design Data Corp. v. Md. Cas. Co., 503 N.W.2d 552, 560 (Neb. 1993) (emphasis added). "As a general rule, the doctrine of estoppel may not be used to bring within the coverage of a policy risks not covered by its terms, or risks *expressly excluded* therefrom." First United Bank of Bellevue v. First Am. Title Ins. Co., 496 N.W.2d 474, 480 (Neb. 1993) (emphasis added). Here, as noted above, Part D of the Policy covering Mallory's errors and omissions expressly excluded the property damage claimed by McShane from coverage.

"A widely recognized exception to the general estoppel rule is that when an insurance company *assumes the defense of an action* against its insured, without reservation of rights, and,with knowledge, actual or presumed, of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of non-coverage." Id. (emphasis added). "The exception to the general estoppel rule applies when an insured is able to show (1) that the insurer had sufficient knowledge of facts or circumstances indicating non-coverage, (2) that the insurer *assumed or continued defense of the insured* without obtaining an effective reservation of rights agreement, and (3) that the insured suffered some type of harm or prejudice." Id. (emphasis added).

Here, McShane does not plausibly allege that Gotham assumed or continued defense of any claim against McShane. As noted above, Gotham's communications internally and with McShane indicated that it was defending Mallory. Upon receipt of a demand letter from McShane, Mallory tendered defense of the action to Gotham leading Gotham to open a claim file into which it eventually merged McShane's claim—indicating that Gotham was treating McShane's claim as one directed against Mallory by McShane, and not one covering McShane as an Additional Insured. McShane's May 20, 2013, demand letter to Mallory instructed Mallory to submit the costs on "[Mallory's] general liability policy"—not under McShane's Additional Insured policy. Likewise, communications between McShane and Gotham did not assert the claim based upon McShane's status as an Additional Insured. Instead, the demand letter clearly says that McShane is making a claim against Mallory for damages due to design errors committed by Mallory and covered under Mallory's general liability policy. McShane fails to allege that Gotham assumed its defense qualifying for an exception to the general estoppel rule. Id. Thus, McShane fails to plausibly allege that it relied, in good faith, on any promises by Gotham, and is therefore not entitled to estoppel.

For the reasons stated above, McShane failed to state a claim upon which relief can be granted based upon waiver or estoppel, so those counts were properly dismissed.

## III. Conclusion

After giving all reasonable inferences to McShane and accepting the factual allegations as true while drawing on our judicial experience and common sense, we find that McShane has failed to state a claim upon which relief can be granted. Therefore, we affirm the district court's grant of Gotham's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss.

-14-

BEAM, Circuit Judge, concurring in the judgment.

It is my view that McShane Construction Company, LLC, as an endorsed "Additional Insured" under the Gotham insurance policy, enjoys such insurance coverage as is provided by the policy's "Commercial General Liability" part. This would include, absent presently unstated limitations, coverage for any actionable claims McShane may have against its subcontractor Mallory. Thus, within the time frame of an applicable statute of limitations, McShane may state a cause of action against Mallory, if any exists. To date, McShane has not done so.

Accordingly, as the court points out, Nebraska law prevents McShane from seeking redress within this litigation. See, e.g., Allstate Ins. Co. v. Novak, 313 N.W.2d 636, 639 (Neb. 1981).

_____